## ALICE BYRNE v. JAMES BYRNE et al., Appellants.

**Division One, May 31, 1913.**

1. **WILL CONTEST: Incapacity not Pleaded: Eliminating Instruction Necessary.** Where the petition in the suit to set aside a will does not count upon mental incapacity to make a will, but charges mental and physical weakness as producing a mind easily influenced, in connection with the charge of undue influence, fraud and deception, the court should give an instruction asked by proponents telling the jury that "there is no evidence of mental incapacity submitted for your consideration." The issue of incapacity should have been taken out of the case.

2. ————: **Fraud: Gift Subject to Burden: Prior Information: Not Paid.** The fact that testator told one of his sons that he intended by his will to give him certain lands and require him to pay to a grandchild a few hundred dollars in gross and an annual sum during her minority, and that said sums were not paid by said son, is not evidence of fraud, and the court erred in not giving an instruction asked by proponents telling the jury that they did not constitute fraud.

3. ————: **Fiduciary Relation: Burden.** Where there is evidence that a son was managing the testator's business for a year or more before the will was made, there is such a showing of a fiduciary relation as shifts to such son the burden of showing the will, in part drawn by him, was not the result of his undue influence.

4. ————: **Undue Influence: By Wife.** Where the evidence does not show that testator was incapacitated to make a will, but does show a mental weakness that would place him largely in the hands of those surrounding him, testimony that he wrote three items of the will, and that his wife after much coaxing persuaded him to permit a son who was managing his business to finish it, and that she coaxed testator to cut down a gift of six hundred dollars to a grand-daughter to four hundred, is evidence that the wife unduly influenced the testator whilst he was in the very act of drawing the will.

5. ————: ————: **Unequal Distribution.** An unequal distribution of testator's property among his heirs is a circumstance to be considered in connection with the issue of undue influence.

Appeal from Jefferson Circuit Court.—*Hon. Joseph J. Williams,* Judge.

REVERSED AND REMANDED.

*John H. Reppy* and *Byrns & Bean* for appellants.

There was no evidence of fraud on the part of James Byrne, as charged in the amendment made to plaintiff's petition, and the court erred in giving instruction 5. McAtee v. Valandingham, 75 Mo. App. 53; McQuillin's Instruction to Juries, p. 67, par. 95. (2) The amount given to Alice Byrne was a charge on the real estate devised to James Byrne. Murphy v. Carlin, 113 Mo. 113. The failure of James Byrne to pay Alice Byrne six dollars annually during her minority did not tend to establish fraud and such evidence was not competent. Schierbaum v. Schemme, 157 Mo. 17. (3) The court erred in permitting William Delaney to testify that Peter Dunnigan had told him that Alice was to receive six dollars a month and that the will had been scratched by John. McFadin v. Catron, 120 Mo. 263. (4) "The influence denounced by the law must be such as amounts to an over-persuasion, coercion, or force, destroying the free agency of the testator. It must not be merely the influence of affection or attachment nor the desire of gratifying the wishes of one beloved and respected." Jackson v. Hardin, 83 Mo. 183; Riley v. Sherwood, 144 Mo. 368; Tibbe v. Kamp, 154 Mo. 579; Sehr v. Linderman, 157 Mo. 11; McFadin v. Catron, 138 Mo. 218; Seibert v. Hatcher, 205 Mo. 83; Martin v. Bowderman, 158 Mo. 392; Ginter v. Ginter, 22 L. R. A. (N. S.) 1024. (5) The court erred in refusing the instructions requested by defendants. Hughes v. Rader, 183 Mo. 708; Tibbe v. Kamp, 154 Mo. 579; Riley v. Sherwood, 144 Mo. 366; Martin v. Bowderman, 158 Mo. 392; Carl v. Gabel, 120 Mo. 294.

*George Safford* and *R. A. Frazier* for respondent.

(1) Absolute or partial disinheritance is evidence of undue influence. "Where the will is unreasonable in the provisions, and inconsistent with the duties of the testator with reference to his property and family—this, of itself, will impose upon those claiming under the instrument the necessity of giving some reasonable explanation of the unnatural character of the will." Mowry v. Norman, 204 Mo. 192; McFadin v. Catron, 120 Mo. 271; Gay v. Gillilan, 92 Mo. 264; Benoist v. Murrin, 58 Mo. 312; 1 Redf. on Wills, 537; 1 Redf. on Wills (2 Ed.), 520-521; Lynch v. Clements, 24 N. J. Eq. 431; Harrell v. Harrell, 1 Duv. (Ky.) 203. (2) While the courts have gone to great lengths in sustaining the full abstract and concrete power of testamentary disposition, they also recognize the evil that springs from the itching and meddlesome disposition of outsiders, to make wills for others—to make a wiser distribution of their property than they have done—and have, in many cases, shown their inclination to check that evil by curbing that disposition, and by upholding the right of the owner of an estate to dispose of it as he elects. Meier v. Butcher, 197 Mo. 86. (3) In all transactions between persons occupying relations, whether legal, natural or conventional in their origin, in which confidence is naturally inspired, is presumed, or in fact reasonably exists, the burden of proof is thrown upon the persons in whom confidence is reposed to show affirmatively that no deception is practiced, no undue influence used, and that all was fair, open, voluntary and well understood. Egger v. Egger, 225 Mo. 137; Adams v. Adams, 81 Ill. App. 639; Mott v. Mott, 49 N. J. Eq. 192; 1 Story, Eq. Jur., secs. 246, 311; Malin v. Malin, 2 Johns. Ch. 238; Bigelow on Fraud, 265; Simpler v. Lord, 28 Ga. 52; Allore v. Jewell, 94 U. S. 511; Harding v. Handy, 11 Wheat. 103; 8 Am. & Eng. Ency. Law, p. 1310; Yoakum v. Yoakum,

77 Ill. 85; Martin v. Martin, 57 Tenn. 654; Thomas v. Whitney, 186 Ill. 225; Walker v. Shepard, 210 Ill. 110. (4) Mere acquiescence in the fraud or undue influence of another is sufficient. Cowan v. Shaver, 197 Mo. 214. (5) A son may stand in a fiduciary relation to his own father. Mowry v. Kettering, 204 Mo. 191. (6) There may be a fiduciary relation between husband and wife. Egger v. Egger, 225 Mo. 144. (7) Where a devise or legacy has been given by a testator to one occupying a fiduciary relation to him, proof of the existence of such a relation raises the presumption of undue influence which will be fatal to the bequest, unless rebutted by proof of full and free deliberation and spontaneity on the part of the testator, and good faith on the part of the devisee or legatee. Bradford v. Blossom, 207 Mo. 177; Dausman v. Rankin, 189 Mo. 703; Carl v. Gabel, 120 Mo. 297; 1 Woerner's Amer. Law of Adm. (2 Ed.), sec. 32. (8) It is a suspicious circumstance that the principal beneficiary writes the will, and undue influence may be inferred therefrom. Berg v. Moreau, 199 Mo. 431; Roberts v. Bartlett, 190 Mo. 702; Harvey v. Sullens, 46 Mo. 151; Barry v. Butlin, 1 Curteis Ecc. 637; Crispell v. Dubois, 4 Barb. (N. Y.) 393; Carl v. Gabel, 120 Mo. 297. (9) The change from $600 to $400 can be most naturally explained as the result of an interested, not to say mercenary mind of a person or persons having dollars rather than paternal love in mind, and it is not likely to have been a thought originating with the devout Catholic grandfather *in extremis*. Berg v. Moreau, 199 Mo. 431. (10) A failure to provide for dependent children, while providing for independent ones, is competent evidence of testamentary incapacity, as well as undue influence. Mowry v. Norman, 223 Mo. 470; Thompson v. Ish, 99 Mo. 160; Schouler on Wills (3 Ed.), p. 262; 28 Am. & Eng. Ency. Law (2 Ed.), pp. 106-7; Meier v. Butcher, 197 Mo. 87. (11) Advanced age, long physical suffering, great mental anxiety, rheumatism, and a stiff knee,

a decline in general health, the keeping of a rough and incorrect account book, failing memory, and a contract to give a tenant one-half of the crops, each party to pay half of the expenses, is evidence of unsound mind. McFadin v. Catron, 120 Mo. 267. The provisions of the will tend to show mental incapacity. Mowry v. Norman, 223 Mo. 470. (12) As the physical condition has much to do with the mental, the physical condition of the testator may be considered. Roberts v. Bartlett, 190 Mo. 701; Meyers v. Hauger, 98 Mo. 438. (13) Statements of the testator, either before or after executing the will, are admissible to show mental condition and the state of his affections. McFadin v. Catron, 120 Mo. 266; Bush v. Bush, 87 Mo. 485. (14) Moral command asserted and yielded to for the sake of peace and quiet, or escaping from distress of mind or social discomfort, if carried to a degree in which the free play of the testator's wishes is overborne, will constitute undue influence, though no force is either used or threatened. Gay v. Gillilan, 92 Mo. 261. (15) A promise to provide for a third party by a devisee not intending to do so, is fraudulent, and avoids the will. Gordon v. Burris, 153 Mo. 229. (16) The testimony of James Byrne that he did not pay plaintiff the money the will required him to pay her during her minority, is admissible, as tending to show bad faith. Gordon v. Burris, 141 Mo. 618. (17) A will contest is a civil cause, and the court is not required to instruct the jury of its own motion. Farmer v. Farmer, 129 Mo. 539. (18) The instructions should not be closely scanned, because even if there were error, that would not justify reversal, because the verdict is for the right party. Von De Veld v. Judy, 143 Mo. 367; Vogg v. Railroad, 138 Mo. 172; Greer v. Bank, 128 Mo. 559; Fox v. Windes, 127 Mo. 514; McFarland v. Heim, 127 Mo. 327; Fitzgerald v. Barker, 96 Mo. 661; Brobst v. Brock, 10 Wall. 519; Osborne v. Morgan, 127 Mass. 1; Norton v. Paxton, 110 Mo. 462. (19) There

was ample evidence of fraud on the part of James A. Byrne, as charged in the amendment made to plaintiff's petition, and the court did not err in giving instruction 5. Silence when one is under obligation to speak, is as much fraud as active misrepresentation, and this is true, even though the duty to speak be only a moral duty. McAdams v. Cates, 24 Mo. 223; Manter v. Truesdale, 57 Mo. App. 435. (20) The case clearly should have been submitted to the jury. Smith v. Hutchison, 83 Mo. 691. (21) "The court shall, in every stage of the action, disregard any error or defect in the pleadings or proceedings which shall not affect the substantial rights of the adverse party; and no judgment shall be reversed or affected by reason of such error or defect." R. S. 1909, secs. 1850, 2082; Friedman v. Williamson, 220 Mo. 217; Mann v. Doerr, 222 Mo. 1; Berry v. Railroad, 214 Mo. 593; Stumpe v. Kopp, 201 Mo. 412; Cross v. Gould, 131 Mo. App. 585; Armelio v. Whitmann, 127 Mo. App. 698.

GRAVES, J.—Action contesting the last will of Patrick Byrne, who died in Jefferson county, Missouri, July 5, 1891. The instrument was executed June 20, 1891, and probated August 8, 1891. Plaintiff is the grand-daughter of the deceased, and the defendants are his widow and surviving children. All (with plaintiff and defendants) are mentioned in the will as devisees. We construe the grounds upon which the will is contested to be (1) undue influence, (2) fraud, (3) deceit. Mental incapacity is not a specified ground of this contest, although the physical and mental condition is pleaded as tending to show that the testator could be unduly influenced, or easily tricked, defrauded or deceived. Such are taken to be the pleadings, but out of abundant caution, we will give the language of the petition. For grounds the petition avers:

"That at the time at which said pretended will was executed, for several years prior thereto, and at

all times thereafter during the life of said testator, the said Patrick Byrne was physically delicate, weak and infirm; and that during all that time he was suffering with asthma, physical weakness, mental debility and other derangements; that at the time the said Patrick Byrne executed and signed the said paper purporting to be the last will of the said Patrick Byrne, and for a long time prior thereto, as aforesaid, the said Patrick Byrne was by reason of his affliction and condition dependent upon others in the management of his affairs; and at the time said Patrick Byrne executed and signed said purporting will, and for some time theretofore, the said Patrick Byrne advised with, confided in and trusted the management of his affairs to the defendants, John Byrne, James Byrne and Rose Byrne, and that said John Byrne and James Byrne were at all such times strong, active, intelligent, shrewd men, in the prime of life, living with the said testator, Patrick Byrne, and in the general charge of his affairs; and that the said Rose Byrne was at all such times the wife of the said Patrick Byrne, a woman in good health, and in general charge of the said testator and his home; that the said alleged will was prepared and drawn, or procured to be prepared and drawn by the said defendants, John Byrne, James Byrne and Rose Byrne, to whom unreasonably large portions of said estate purport to be bequeathed and devised, as aforesaid; and the execution thereof was procured by fraud and undue influence of the said defendants, John Byrne, James Byrne and Rose Byrne, upon the said testator, Patrick Byrne, in fraud of and to deprive this plaintiff of her rights as an heir at law of the said deceased, Patrick Byrne, testator; that both the execution of said instrument and the probate thereof as and of the last will and testament of the said Patrick Byrne were brought about by fraud, deception and undue influence of the said John Byrne, James Byrne and Rose Byrne for the benefits and

privileges given them and each of them by the said will; and the plaintiff further states that by reason of the premises, the said instrument purporting to be the last will and testament of the said testator, Patrick Byrne, deceased, is not his last will and testament.

"Plaintiff further states that said alleged will is the result of fraud, in this, that said will and the provisions thereof was procured by James Byrne, son of Patrick Byrne, deceased, by intentionally causing and permitting the said Patrick Byrne, deceased, to hope and believe that he, the said James Byrne, would pay Alice Byrne, this plaintiff, the sum of six dollars from time to time during her minority, when in fact the said James Byrne did not intend to pay the said Alice Byrne said sum or any other sum or sums during her minority, and that the said James Byrne by said will fraudulently, by the acts aforesaid, induced the said Patrick Byrne, deceased, to execute the alleged will, and thereby will him, the said James Byrne, a large tract or tracts of land and improvements thereon, and an undue portion of the alleged testator's estate, exceeding in value by several thousand dollars the property to be received under said alleged will by the brothers and sisters of said James Byrne, said acts of fraud contributing with the said undue influence used by said James Byrne, John T. Byrne and Rose Byrne in causing the execution of said alleged will."

The answers are such as would be expected under such a petition, and raised the issues aforesaid. Upon a trial before a jury the plaintiff had a verdict, and judgment was duly entered thereon. The paper writing was found not to be the last will and testament of the deceased Patrick Byrne. From such judgment the defendants (proponents of the will) have appealed. Error is alleged in the giving and refusing of instructions, and in the admission and rejection of evidence.

Further details will be noted in connection with the points raised.

I. The verdict in this case will have to be reversed for several reasons. These we will take in order after detailing more of the pertinent facts. The deceased at the making of the will was aged about seventy-one years, and had been a sufferer from asthma and other troubles. He was a strong-minded man, and had held the positions of judge of the county court, and justice of the .peace. The plaintiff was the only child of a deceased son, which son at the time of his death (a year or so prior to the death of the father) was well liked by the father. The whole estate was worth from $35,000 to $50,000—say to be safe $35,000. The will is short, and will speak best for itself. It reads:

"In the Name of God, Amen.

"I Patrick Byrne being of lawful and disposing mind, do make known this as my last will and testament.

"First, I give to my son James all my land in survey 3059, township 43, range 4 east together with mill machinery and all appurtenances thereto belonging, with the understanding that he gives Thomas daughter $400 when she becomes of age and six dollars a year during her minority.

"Second, I give to my son Pat 150 acres in survey 1999 together with eleven acres given to me by Elias Burgess in said survey.

"Third, I give to my son John the balance of my land in survey 1999 said to contain ninety acres together with sixty acres in section 36, township 43, range 3.

"Fourth, the upper third of sur. 908 together with 40.24 acres 3 W. Fr. 31—township 43, range 4 together with 27 55/00 acres N. W. Fr. sec. 6, township 42, range 4 also 4 76/00 N. E. Fr. sec. 1, township 42, range 3. Also balance of section 36, township 43, range 3 which

constitutes the home farm I give to my wife Rose during her natural life to manage as she pleases.

"Fifth, I give to my daughter Mary Jane the sum of $1200; to my daughter Anna $1200 and to my daughter Ellie $1200 in lieu of lands given to my sons. I give to my son Christopher the sum of $500.

"Of all my other personal property I give to my wife two-thirds and to my son John one-third.

"After my wife's death the home place to belong to all my children share and share alike. I also appoint my beloved wife Rose and my son John as executors to execute this my last will without bond.

"In testimony whereof I have hereunto set my hand this 20th day of June in the Year of Our Lord, 1891.

"PATRICK BYRNE."

At the home there resided with the deceased his wife and his son John, who had received a college education, and a year and one-half in a law school. The last year the deceased was so afflicted that the son John attended to his farm, and other business. This we take from the testimony of John himself. The first three items of the will were written by the testator, and there is evidence that the wife after much coaxing got the deceased to permit John to finish the will. It is also in evidence that the deceased directed that the present plaintiff be given six hundred dollars upon attaining her majority, and that the wife coaxed him to cut it down to four hundred. There is expert evidence that this change of six to four is in the handwriting of John. The plaintiff was born in 1889, and was very young at the death of the grand-father. It is also in evidence that the testator was very fond of her and stated at one time that she would get the father's share of the estate. Other facts will be detailed in connection with the points discussed.

250 Mo.—41

The first error we discover is the refusal of defendant's instruction numbered 2, which reads:

"The court instructs the jury that under the evidence adduced in this case there is no evidence of mental incapacity submitted to your consideration in this case."

This instruction should have been given, because the petition, which we have set out in the statement, does not count upon mental incapacity to make a will.

At most this petition charges mental and

**Incapacity:
No Issue:
Instruction.** physical weakness as tending toward producing a mind that could be more easily influenced. This is all we can make out of the charges in this petition. Mental incapacity to make a will is not charged. Now, whilst it devolves upon the defendants, as proponents of the will and in making their *prima facie* case, to show mental capacity to make a will, yet we have never understood it to be a rule that such question is to be submitted to the jury, unless it is charged as a ground for setting aside the will. It is also true that the proponents carry the burden of showing mental capacity, when the plaintiff in a will contest avers mental incapacity. [Mowry v. Norman, 223 Mo. 463.] Of course if in making the *prima facie* case the evidence discloses mental incapacity, the court should direct a verdict rejecting the paper writing as the last will and testament. But such is not the case here. The *prima facie* case showed mental capacity, and even the evidence for the plaintiff is not sufficient to show mental incapacity. Under the pleadings and under the evidence there is no question that this issue, if it was an issue, should have been taken out of the case by the instruction aforesaid. We do not think it was a live issue, either by proof or pleading, but the petition is so peculiarly worded that the jury may have been misled, although no instruction was asked by plaintiff upon mental incapacity. To the end that the issues under the pleadings should be

clearly drawn, we think this instruction numbered 2 was proper. Standing alone, under the facts of this case, it might not be such error as would necessarily work a reversal, but its refusal evidently contributed its mite to the result, in an exceedingly close case.

II. Defendant's instruction numbered 3 should have been given, and its refusal was error. This instruction reads:

"The court instructs the jury that there is no evidence in this case that the will of Patrick Byrne, deceased, was procured by the fraud of James Byrne, and you cannot find against the will on that issue."

James Byrne was not present at the making of the will. Upon two occasions the father had told him that he was going to will him certain lands, and would require him to pay the plaintiff Alice Byrne, some money, the amount not stated. During the course of the trial the petition was amended to charge fraud upon the part of James Byrne in procuring the will. Counsel for the plaintiff has diligently searched the record for the evidence of this fraud practiced by James Byrne, and we quote from that all that was found upon the subject.

*Fraud: No Evidence: Instruction.*

"James Byrne, one of the defendants, on behalf of plaintiff, testified:

"That Patrick Byrne, deceased, just because he felt disposed to do so, went to witness on more than one occasion and told witness what disposition he was going to make of his property—told him about the same thing each time—told witness that he was going to leave property to him and require him to pay Alice Byrne money.

"Q. Did he tell you that he was going to leave property to you and require you to pay money to Alice? A. Yes, sir.

"Q. And did you promise him that you would

pay her that money if he left the property to you as he said? A. I don't know as I promised. He told me, of course, I—

"Q. Did you promise him that you would pay her? A. He did not exact any promise from me.

"Q. How is that? A. He did not exact any promise from me.

"Q. · I don't suppose he would exact a promise, but you assented to what he said, did you? A. I did; yes, sir.

"Mr. Safford: Q. What did you say to him? A I don't remember what answer I made him at the time. I think I listened to what he was saying.

"Q. You can't give the exact language? Will you in substance—can you tell us substantially the language that you used, if you can tell the exact language? A. That I used?

"Q. Yes. A. No, I can't, because I don't know that I said anything. I listened.

"Q. Do you want us to understand he talked to you on such a subject on two different occasions, and that you did not say anything to him at all? A. I listened to him, he—

"Q. What's that? A. I don't know that I made any answer. I listened to what he had to say.

"Q. How does it remember—how does it come that you can remember what he said to you, and can't remember what you said to him? . A. I don't know how it comes.

"Q. Now, what did he say about what portion, if any, Alice would get—Thomas's child? A. The same thing he said to me the first time, about it; a few hundred dollars.

"Q. A few hundred dollars—did not fix the amount? A. No, sir.

"Q. Did you— A. He said, 'whatever I would put in the will, a few hundred dollars; whatever I would put in the will.'

"Mr. Safford:  Q.  What's that?  A.  'Whatever I would put in the will—a few hundred dollars; whatever I would put in the will.'

"Senator Byrns:  Q.  Whatever it was he would put it in his will?  A.  Put it in his will.

"Q.  Now, did you visit your father during his last sickness?  A.  Yes, sir.

"Q.  How often?  A.  Well, not every day, but probably every second day; sometimes, went every day, and sometimes would not go for two or three days.

"That witness did not pay Alice Byrne any money during her minority because she was a minor—in charge of her mother—it was a small amount—there was no curator appointed; there was no demand made upon him for it; he always intended to pay it, and does intend to pay it."

Upon these facts, recited most favorably for the plaintiff by her counsel, it is urged that the question of fraud upon the part of James Byrne should have been submitted to the jury.  We have taken the resume of the evidence made by counsel rather than our own.  This evidence only shows two things: (1) that James remained silent, when his father spoke of the subject, and (2) that afterward he did not pay the six dollars per year as mentioned in the will.  He in a way explains why he did not pay.  This evidence, nor any evidence of this character is sufficient to show fraud in the making of a will.  In the first place this allowance to the grand-child is a charge upon the estate devised to James, and such charge can be enforced.  [Murphy v. Carlin, 113 Mo. 112.]

James Byrne when he accepted under the will became bound to pay the charges made by the will. His acceptance under the will made him to speak, when theretofore he had been silent, as runs the evidence.  His conduct thereafter in not paying the sums annually is not evidence of fraud in procuring the will.  This

instruction asked by James Byrne should have been given, and the instruction numbered 5 given for plaintiff submitting the alleged fraud upon the part of James Byrne should have been refused. For this error the judgment must be reversed and cause remanded.

III. As the cause will have to be retried some further suggestions should be made.

(a) There is evidence in the record that John Byrne was managing his father's business for a year or thereabout before the making of the will. This shows a fiduciary relation, and shifts the burden as to the question of undue influence, so far as John is concerned. With this suggestion proper instructions can be drawn upon a retrial. [Mowry v. Norman, 204 Mo. 173 and 223 Mo. 463.]

**Fiduciary Relation.**

(b) There is some evidence in the record that the wife unduly influenced the husband whilst in the very act of drawing the will. He was weak both mentally and physically and was a fit subject for influence from stronger minds. The evidence does not disclose his incapacity to make a will, but it does show a mental condition that would place him largely in the hands of the stronger minds surrounding him at the time.

**Undue Influence of Wife.**

(c) There may be enough in the record tending to show a wrongful change of the will, in so far as plaintiffs' share is concerned, and this should be the subject of a proper instruction, but we do not approve of plaintiff's instruction numbered 6 on that question.

**Changes in Will.**

(d) The evidence does not disclose any undue influence upon the part of James Byrne, and this point should be properly guarded upon retrial, unless the evidence is different and develops more facts. In this connection the

**Unequal Distribution.**

unequal distribution made by the will would be a circumstance.

(e) Upon a retrial many of the objections made by counsel for plaintiff during the examination of the witness to the will should be obviated. These objections, many of them, reached the very pinnacle of extreme technicality, and then some. Strange to say the learned trial judge was as profuse in sustaining these as the counsel was in making them. A reading of the examination of Patrick McDermott, one of the attesting witnesses, covering eighty printed pages, would be conclusive proof that the period of legal reforms in some direction has arrived. Upon retrial counsel as well as court should see that there is at least some substance to objections made.

**Technical Objections.**

There are other matters in the brief, but the issues being as we have indicated, all questions can be covered by approved instructions upon a retrial, and we will not go further.

Let the judgment be reversed and the cause remanded. It is so ordered. All concur.