# MARY H. BURTON v. H. FRANK HOLMAN, Administrator, et al., Appellants.

## Division Two, May 26, 1921.

1. **WILL CONTEST: Mental Capacity: Undue Influence: Instructions.**
In a will contest case, where the mental capacity of the testatrix to make a will was not questioned either in the pleadings or in the trial of the case, and the only issue was whether the will was procured by the undue influence of the family physician who was also the trusted confidential business advisor of the testatrix, the trial court committed no reversible error in instructing the jury at the instance of plaintiff that if they found the testimony of the subscribing witnesses to the will as to its execution and that testatrix was of sound mind to be true they should find that the instrument produced was the will of testatrix unless they should further find that it was the result of undue influence, and in refusing to instruct the jury at the instance of defendants that the mental capacity of the testatrix to make a will was not an issue in the case, although the giving of such an instruction would have resulted in no harm.

2. ————: **Demurrer to Evidence in Chief: Waiver by Putting in Evidence.** Where defendant does not stand on his demurrer to plaintiff's evidence in chief, but, after it is overruled, himself puts in evidence, he thereby waives his right to object to the overruling of his demurrer, as it then becomes the duty of the jury to pass upon the evidence as a whole.

3. ————: **Demurrer to Evidence at Close of Case: Physician and Patient: Undue Influence: Conflict of Evidence.** In a suit brought by a daughter of the testatrix to contest the will on the ground that it was the result of the undue influence of one of the defendants to whom was left about one-half of the estate and who was the family physician and confidential business advisor of the testatrix, who was about seventy-eight years old when the will was made, the presumption of law is that the will was the result of undue influence and the burden was upon the defendant physician to show that it was not; and there being substantial evidence to support the plaintiff's contention defendant's demurrer to the evidence at the close of the whole case was properly overruled.

Burton v. Holman.

4. ———: Instruction: Comment on Evidence. In a will contest case, where the issue was whether the will was the result of the undue influence of one of the beneficiaries of the will, who was the family physician and confidential business advisor of the testatrix, an instruction, asked by defendants, was properly refused, which stated only part of the facts appearing in the evidence in the case and told the jury that "such facts are no evidence of undue influence taken alone and raise no presumption of the invalidity of the will, provided the jury find that while making the will she had a sound and disposing mind and memory," because such instruction is an unwarranted comment on a part only of the evidence and also in conflict with an instruction given for plaintiff whereby the jury was directed in passing upon undue influence to consider all the facts and circumstances shown by the evidence.

Appeal from Randolph Circuit Court.— *Hon. A. W. Walker,* Judge.

AFFIRMED.

*J. H. Whitecotton, M. J. Lilly, W. B. Stone* and *Edmund Burke* for appellant.

(1) The testimony of Wisdom Burton and other witnesses' testimony as to transactions had by Dr. Dinwiddie with and for Martha Harlow was incompetent and tended to prejudice the jury against him and was offered for that purpose only. (2) The instruction asked at the close of the plaintiff's case in chief should have been given for the reason, that there was no substantial testimony tending to prove "mental incapacity," or the exercise of "undue influence," one of which must have been proven in this case or the instruction should have been given. Undue influence means such influence as amounts to over-persuasion, coercion or fraud, destroying the free agency and will power of the testator. Martin v. Bowden, 158 Mo. 392; Tibbs v. Kamp, 154 Mo. 579; Sehr v. Linderman, 153 Mo. 289; Campbell v. Carlisle, 162 Mo. 647. (a) Also affirmative proof of such undue influence is required to be made either by direct facts shown or

such facts and circumstances as from which undue influence naturally results as a reasonable and fair inference, and not as mere conjecture. Tibbs v. Kamp, 154 Mo. 579; Campbell v. Carlisle, 162 Mo. 647; Weber v. Strobel, 236 Mo. 663. (b) Influence gained by kindness and affection will not be regarded as ''undue,'' if no imposition or fraud be practiced. Weber v. Strobel, 235 Mo. 664; Gordon v. Burris, 141 Mo. 616; In re Small, 105 App. Div. (N. Y.) 141. (3) Instruction No. 1 asked by the defendants should have been given. There was neither an allegation in the petition making ''mental incapacity'' a ground for contesting the validity of the will. Neither was there any proof offered that tended to prove the same had it been alleged. ''Mental incapacity'' not being charged as a ground and no proof made, the court should have given this instruction as said by this court in a similar case (Byrne v. Byrne, 250 Mo. 542): ''At most this petition charges mental and physical weakness as tending toward producing a mind that could be more easily influenced.'' To make the matter worse the court not only refused this instruction but gave one asked by the plaintiff making mental incapacity an issue. Both actions of the court were under the pleadings and the evidence prejudicial error. Byrne v. Byrne, 250 Mo., 632; Coherly v. Donovan, 208 S. W. 53, 204 S. W. 730. (a) Instruction marked ''D,'' should not have been given, for the reason that it submits an issue neither in the pleadings nor supported in the least by the evidence. It is also objectionable for the further reason that it is conditioned on undue influence of Dr. Dinwiddie, or anyone acting for him without any proof whatever in the case as to the fact of anyone acting for him. It is purely speculation and is therefore, prejudicial to defendants. (b) Instruction marked ''E,'' should not have been given, for the reason there was no substantial evidence on which to base such an instruction. (c) The court having given an instruction submitting to the jury both the question of ''undue influence'' and ''mental incapacity''

should have given defendants' instruction numbered 3, and it was reversible error to refuse it. (4) The trial court should have granted the defendant a new trial because of the aforesaid errors committed by the court, and for the further reason, that there was no substantial testimony to support the verdict of the jury, on either "mental incapacity" or "undue influence." There must be substantial testimony in the case to support the verdict or the court should have granted a new trial; and this court in the case of a refusal of the trial court to so act will reverse the judgment. Naylor v. McRuer, 248 Mo. 423; Major v. Kidd, 261 Mo. 607; Kleinlein v. Krauss, 209 S. W. 933; Norton v. Paxton, 110 Mo. 461; Teckenbrock v. McLaughlin, 209 Mo. 538; Sayre v. Princeton University, 192 Mo. 120.

*Willard P. Cave* for respondent.

(1) The testimony of Wisdom Burton is entirely competent, and there is nothing there to indicate that the questions were in any way improper. (2) The instruction asked by defendant at the close of plaintiff's case in chief, was properly refused, it being an instruction in the nature of a demurrer to the evidence, as there was a sharp issue of facts made in the case. (a) Furthermore in cases where undue influence is charged, and the facts are undisputed, that the defendant, Dinwiddie, was not only the confidential advisor and agent of the deceased, but also was her family physician and treated her professionally at the time, and immediately before the alleged will was made, under the laws of this State, the burden of proof is cast upon such person occupying a confidential relationship to a deceased to disprove the fact of undue influence. Hall v. Knappenberger, 97 Mo. 509; Dausman v. Rankin, 189 Mo. 677; Cornet v. Cornet, 248 Mo. 234; Mowry v. Jarman, 204 Mo. 173; Byrne v. Byrne, 250 Mo. 632; Sittig v. Kersting, 223 S. W. 742. (3) Instructions prayed for by plaintiff and given by

the court, numbered A, B, C, D, E, F, G and H, are all correct declarations of the law.

RAILEY, C.—This suit was commenced by plaintiff, in the Circuit Court of Randolph County, Missouri, on August 9, 1918, in vacation, to contest the will of her mother, Martha Harlow, a resident of said county, who died about April 26, 1918. The will was duly probated in said county, and is set out in the abstract of record. The executor named in the will, and the heirs of testatrix Statement. having refused to administer upon said estate, the Probate Court of Randolph County, on May 8, 1918, appointed defendant, H. Frank Holman, public adminstrator of said county, to take charge of the estate, and he is now the acting administrator of said estate. The other defendants are designated as beneficiaries in said will.

The controversy, as presented in the petition, is clearly stated in *respondent's* brief, as follows:

"The entire gist of the action is alleged to be undue influence exercised by the principal defendant, Dr. T. H. Dinwiddie, who was the practicing physician and trusted confidential advisor of the deceased, Martha Harlow."

*Appellants* state the issues involved, as follows:

"The petition, while being very verbose, bases its right to set the will aside on undue influence only."

The answer of the real defendants, Dinwiddie and the trustees of the Baptist Church of Higbee, is a general denial of undue influence.

The testatrix, Martha Harlow, was the widow of John F. Harlow, who died about 1898, while living at Higbee in said county. Plaintiff is the only child of testatrix and John F. Harlow.

The will in controversy is dated April 4, 1903. By the *third* and *seventh* paragraphs of the will, plaintiff was given $500, and the household and kitchen furniture left by her mother. The eight paragraph of said will reads as follows:

"I will, devise and bequeath to T. H. Dinwiddie, Lots Nine (9) and Ten (10) in Block One (1), in Owen's Division of Higbee, in Randolph County, Missouri, to have and to hold in fee simple forever, and I also will and bequeath to said T. H. Dinwiddie the sum of One Thousand Dollars."

The evidence tends to show, that testatrix was about 76 or 78 years old when the will was made on April 4, 1903.

Respondent contends, that the estate left by testatrix was of the value of $6,500 or $7,000. Appellants contend, that it was worth about $7,300. The latter amount is named as the value by Wisdom Burton, one of plaintiff's witnesses.

The will, after providing for the payment of testatrix's debts, and the other bequests mentioned, left the remainder of her estate to James E. Rucker and John H. Botts, as trustees of the Baptist Church of Higbee, Missouri.

As appellants are insisting that the cause should be reversed with instructions to sustain the will, in order to avoid repetition, we will consider the evidence on the merits, the instructions and the rulings of the court, in the opinion.

The jury returned a verdict rejecting the will; judgment was entered in due form on the verdict; appellants, in due time, filed motions for a new trial and in arrest of judgment. Both motions were overruled and they duly appealed the cause to this court.

I. There was no controversy at the trial over the pleadings, or evidence thereunder, as to the sufficiency of testatrix's *mental* capacity to make the will in controversy.

Counsel for plaintiff, in his opening statement to the jury, after calling attention to the testimony which would show Dr. Dinwiddie was the family physician of

testatrix and was her confidential busi-

**Will Contest:** ness advisor, said:

**Mental Capacity:**
**Undue Influence:**          ''If we show you these, then we say
**Instructions.**          we do not think there will be any linger-
ing doubt in your mind *that this will was
procured by the undue influence of the defendant Din-
widdie.''* (Italics ours.)

Counsel for appellants, after stating to the jury
their theory of the case, said:

''Now, I think the testimony will disclose these
facts, *that the will was made of her own free will with-
out influence or suggestion from a living soul.* If these
facts turn out as I believe they will turn out, I don't
believe you will have any trouble on earth in sustaining
this will.'' (Italics ours.)

In appellants' *original* brief, it is said:

''The petition, while being very verbose, bases its
right to set the will aside *on undue influence only.''*
(Italics ours.)

In appellants' *reply* brief, it is said:

''It is admitted by the respondent that this action
is based upon the exercise of *undue influence* by Dr.
Dinwiddie over the mind of Martha Harlow, deceased,
and therefore respondent claims that said will was pro-
cured by the *undue influence* of Dr. Dinwiddie.'' (Ital-
ics ours.)

In respondent's brief, it is said:

''The entire gist of the action is alleged to be *un-
due influence* exercised by the principal defendant, Dr.
T. H. Dinwiddie, who was the practicing physician
trusted confidential business advisor of the deceased,
Martha Harlow.''

The plaintiff did not ask a verdict at the hands of
the jury, upon the idea, that testatrix did *not* have
sufficient *mental* capacity to make the will. Nor does it
appear from the record, that plaintiff's counsel *argued*
or even *suggested* any such question before the jury.
Appellants made formal proof as to the execution of the
will by Jones and Wayne, who testified, without contra-
diction by any one, that testatrix was of sound mind and
executed the will in their presence, etc. There was ab-

solutely *no controversy* over the mentality of Mrs. Harlow, at *any* stage of the proceedings.

The court, therefore, gave to the jury, at the instance of plaintiff, instructions A. and D. which, in legal effect, told the jury, if the testimony of Jones and Wayne was found by them to be true, then they should find, that the instrument produced, was the will of testatrix, *unless* they should further find, *that it was the result of undue influence, etc.* In said instructions A. and D. the jury were not *directed* to find for *plaintiff* under *any* circumstances. We are at a loss to understand, how appellants could have been injured on account of the giving of said instructions.

In the case of Byrne v. Byrne, 250 Mo. l. c. 642, relied on by appellants, the facts were different. The *meaning* of the petition was *doubtful,* and the *testimony* produced at the trial was an issue in the case. On page 642, Judge GRAVES said:

"The prima facie case showed mental capacity, and even the evidence for the plaintiff is not sufficient to show mental incapacity. Under the pleadings and under the evidence there is no question *that this issue, if it was an issue,* should have been taken out of the case by the instruction aforesaid. We do not think it was a *live* issue, either by proof or pleading, *but the petition is so peculiarly worded that the jury may have been misled, although no instruction was asked by plaintiff upon mental incapacity.* . . Standing alone, under the facts of this case, it might not be such error as would necessarily work a reversal, but its refusal evidently contributed its mite to the result, *in an exceedingly close case."* (Italics ours.)

The instruction mentioned by Judge GRAVES as having been refused, is similar in form and substance to appellants' instruction one (1) refused in this case.

*On the facts heretofore set out, testatrix's mental capacity to make the will was not questioned in the pleadings or in the trial of the case.* It would be a reflection upon the intelligence of the jury to hold, that they *might* have been misled as to the *mental* capacity of testatrix to make the will in controversy. We accordingly

hold, that no reversible error was committed on account of the giving of said instructions A. and D., nor in refusing appellants' instruction one (1), although no *harm* would have resulted from the giving of same, and informing the jury thereby that *mental incapacity* was not an issue in the case.

II.    Appellants, under proposition II of their "Points and Authorities," contend, that the trial court committed error in overruling defendants' demurrer to plaintiff's evidence in *chief.*

Demurrer to Evidence in Chief: Waiver.    The law of this State is thoroughly settled, adversely to appellants' contention. Instead of standing upon their demurrer to plaintiff's evidence in *chief,* appellants put before the jury their own testimony, and thereby waived their right to object to the overruling of said demurrer, *as it then became the duty of the jury to pass upon the evidence as a whole.* [Bowen v. Ry. Co., 95 Mo. l. c. 275-6, 8 S. W. 230; Guenther v. Ry. Co., 95 Mo. l. c. 289, 8 S. W. 371; McPherson v. Ry. Co., 97 Mo. l. c. 255, 10 S. W. 846; Hilz v. Ry. Co., 101 Mo. l. c. 42, 13 S. W. 946; Riggs v. Railroad, 216 Mo. l. c. 310, 115 S. W. 969; Riley v. O'Kelly, 250 Mo. l. c. 660, 157 S. W. 566; Lareau v. Lareau, 208 S. W. l. c. 243; State v. Jackson, 223 S. W. l. c. 728, and cases cited; State v. Mann, 217 S. W. l. c. 69, and cases cited.]

Under the foregoing authorities, appellants' contention supra, is without merit.

III.    It is further insisted by defendants, that their demurrer to the evidence, interposed at the conclusion of the *whole case,* should be sustained.

If there was *substantial* evidence offered at the trial, tending to support respondent's contention, that the *will* in controversy was the result of *undue influence* upon the part of Dr. Dinwiddie, over the mind of testatrix at the time of its execution, the trial court cannot be convicted of error in overruling said demurrer.

Demurrer at Close of Case: Evidence of Undue Influence: Properly Overruled.

Appellants, at page 10 of their reply brief, very frankly state the law of this case, as follows:

"We admit that it is the law of this State that when a confidential relation is shown to exist between the testator and the recipient of his bounty, an exerted influence will be presumed to have induced the bequest, and the *onus* is cast upon the beneficiary to make explanation of the transaction and establish its reasonableness."

The law, in respect to this subject, is very clearly and concisely stated by this court in Sittig v. Kersting, 223 S. W. l. c., as follows:

"Under such circumstances (e. g., the showing of the existence of a fiduciary or confidential relation), the law presumes the bequest was the result of undue influence, and the burden is thus thrown upon the recipient of the bounty to show that it was not."

To same effect are the following cases: Kleinlein v. Krauss, 209 S. W. l. c. 936; Grundmann v. Wilde, 255 Mo. l: c. 116; Byrne v. Byrne, 250 Mo. l. c. 646; Cornet v. Cornet, 248 Mo. 184; Mowry and Kettering v. Norman, 204 Mo. l. c. 189, and cases cited; Roberts v. Bartlett, 190 Mo. l. c. 699; Dausman v. Rankin, 189 Mo. 688.

In considering the demurrer to the evidence, therefore, at the conclusion of the *whole case,* it becomes our duty to give respondent the benefit of every inference, which a fair-minded jury of ordinary intelligence might legitimately draw from the evidence. It is equally as well settled, that where respondent has produced *substantial* evidence as to the merits of her case, it is not the province of this court to pass upon the *weight* of the evidence, nor have we any legal right to do so. Keeping in mind the foregoing principles of law, which should guide us in the consideration of this case, we will pass to a review of the testimony relating to the subject of *undue influence.*

The evidence of plaintiff *tends to show,* that defendant, Dr. Dinwiddie, a man said to be worth

$20,000 to $25,000, who was neither related to plaintiff, nor her mother, *about* the year 1899, became the administrator of the estate of John F. Harlow, deceased, who was the husband of testatrix, and shortly thereafter, became the family physician of Mrs. Harlow; and continued as such up to the time of her death, in 1918; that during all of said period he was the *confidential business advisor* of Mrs. Harlow; that the latter was about 76 or 77 years or age when the will in controversy was executed on April 4, 1903; that during the month of February, 1903, commencing with the 12th and ending with the 27th of said month, Dr. Dinwiddie made twelve visits to testatrix, and presented an account against her estate for said services, together with a bill for other services, amounting in the aggregate to $260.

*Wisdom Burton* testified, that shortly after the death of John F. Harlow, Dr. Dinwiddie became the physician of testatrix, *"and from that time until she died he attended to her business and was her business confidant to the most minute detail."*

*Dr. Nichols* testified, that Dr. Dinwiddie had been acting as the family physician of Mrs. Harlow and continued as such physician, and looked after her business affairs.

*R. I. Hines* testified, that on one occasion, Dr. Dinwiddie, in speaking of testatrix, remarked that *"the old lady couldn't pay for a load of wood without he said so."*

*Walter Shiftlett* testified as follows:

"Q. What, if anything, in the way of presents and matters of that kind did he make to the old lady back in 1901, 1902, 1903, 1904 and 1905? A. Well, I have been there Christmas times and maybe around her birthday and she nearly would always have something that she said Doctor Dinwiddie gave to her—several times it was a small bottle of whiskey and little dishes and glasses or something of that kind. I know a number of times she showed me little dishes that she said Doctor Dinwiddie gave to her."

*Mrs. Dolly Shiftlett* testified, that shortly after Mr. Harlow's death, Dr. Dinwiddie became the family physician of testatrix, and continued as such up to the time of her death; that he looked after the business of Mrs. Harlow *wholly.* This witness was a grandchild of testatrix, and testified that the latter was always on pleasant and congenial terms with plaintiff and the mother of witness.

*Mr. Willard P. Cave* testified in favor of plaintiff, as follows:

"To the best of my recollection, knowledge and belief, the instrument was written at the request of the defendant, Doctor T. H. Dinwiddie, in my office, and taken away by him. I gave a receipt for the charge made for preparing the will and it was delivered, with the will, to Doctor Dinwiddie, who took it away from my office."

He said he never saw testatrix and did not know her.

*Dr. Dinwiddie* testified, that he had treated Mrs. Harlow off and on from the date of her husband's death, up to the time of her death; that he was her regular physician; that he collected interest for her on notes that she had out; that he looked after property she had a mortgage on, to see if it was worth the money *"and attended to her business for her in a general way."* He admitted that he borrowed $3,000 from testatrix and owed a part of same at her death; that he was to pay her five per cent interest on the loan, and that he never got less than six per cent on his loans; that the credits on said $3,000 note were in *his* handwriting. Dr. Dinwiddie denied that he took the draft of the will to Mr. Cave and denied *in toto,* the facts which Cave testified about. He also testified, that he had nothing to do with the will, or the making of same, and that he never knew of its contents until after the death of Mrs. Harlow, although he had heard it *intimated* that she had made a will before she died.

288 Mo.—6

*T. H. Walton* testified, in behalf of defendants, that Mrs. Harlow told him in 1911 she would not sell the home where she was living; that she wanted it to go to Dr. T. H. Dinwiddie at her death, *"for her appreciation of what he had done for her."*

*E. E. Newman* was cashier of the Higbee Savings Bank. He said Dr. Dinwiddie was a *director* in said bank, and that Mrs. Harlow's *will* was *kept* in the vault of said *bank* with other wills.

The evidence of plaintiff tends to show, that the value of the estate left by Mrs. Harlow, at her death, was about $7,000, and that about $3,500 in value of property, was willed to Dr. Dinwiddie, while but $500 and the household and kitchen furniture was given to plaintiff, her only child, by the provisions of the will.

The foregoing is a fair outline of the testimony relating to the subject of undue influence.

In view of the law on this subject, as stated at the commencement of this proposition, we hold, without the slightest hesitation, that the trial court was clearly right in overruling appellant's demurrer to the evidence at the conclusion of the whole case.

IV. The trial court is charged with error in refusing defendants' instruction numbered three (3), which reads as follows:

Instructions: Comment on Evidence.

"The court instructs the jury that Martha Harlow in making her will had the right to dispose of her property as she wished and to give all or so much of the same thereof to any of her relatives or even to other persons not her relatives if she saw fit or deemed proper; and although the jury may believe from the evidence that she made an unjust and improper disposition of her property by will, and cut off some of her relatives with but little who had as strong or stronger claim on her generosity as others who received more of her will, *such facts are no evidence of undue influence taken alone,* and raise no presumption of the invalidity of the will, provided the jury find

that while making the will she had a sound and dis-
posing mind and memory.'' (Italics ours.)

This instruction was palpably erroneous, and was
properly refused, because it was an *unwarranted com-
ment,* on a *part* of the testimony in the cause. [Andrew
v. Linebaugh, 260 Mo. l. c. 663; Rice v. J. C. B. & T. Co.,
216 S. W. l. c. 751; State v. Adkins, 225 S. W. l. c. 982-3.]
It was in conflict with plaintiff's instruction E, which
properly declared the law, *and directed the jury in pass-
ing upon undue influence, to consider all the facts and
circumstances shown by the evidence.*

V.  We have carefully examined and fully con-
sidered, all the questions presented by the record, and in
the briefs of counsel.  We are of the opinion, that no
error was committed by the trial court of which appel-
lants can legally complain.  The judgment below was for
the right party, and is accordingly affirmed.  *White* and
*Mozley, CC.,* concur.

PER CURIAM:—The foregoing opinion of RAILEY,
C., is hereby adopted as the opinion of the court.  All
of the judges concur.