## JOSEPH CANTY et al. v. JULIA HALPIN et al., Appellants.

### In Banc, May 22, 1922.

1. **DEMURRER TO EVIDENCE: Waiver.** In an action to contest a will on the ground of undue influence exercised by proponents over testatrix, the proponents, by offering testimony to sustain the will after their demurrer to contestants' case has been overruled, waive their demurrer, and cannot afterwards be heard to complain of its refusal.

2. **WILL CONTEST: Undue Influence: Substantial Evidence: Peremptory Instruction for Proponents.** Where there is some substantial evidence tending to show undue influence exercised over the mind of testatrix by the chief beneficiary of the will, a request by proponents for a peremptory instruction directing the jury to sustain the will should be refused.

3. ———: ———: ———: ———: **Confidential Relation: Shifting Burden.** Where the chief beneficiary of the will managed the business of testatrix for some time prior to the execution of the will and continually thereafter until her death five years later, a fiduciary relation is shown, and the burden on the question of undue influence is shifted to proponents; and there being some substantial evidence that said beneficiary directly exercised an undue influence over the mind of testatrix in shaping her will, a peremptory instruction directing the jury to sustain the will, requested by proponents, should be refused. Such confidential relation having been established, the presumption of the exercise of undue influence should be rebutted by testimony, and the credibility of such rebutting testimony is a question for the jury to determine.

4. ———: ———: **Evidence: Prior Statements by Testatrix: State of Mind.** Testimony that testatrix, prior to making her will, stated to a daughter that when she made her will said daughter would get her share, is competent, when supported by other testimony tending to establish undue influence, for the sole purpose of showing the state of mind of testatrix. Wide latitude is permitted in the admission of testimony showing the state of the affections or condition of mind of testatrix, and such testimony, when supported by other testimony tending to establish undue influence, is competent for the sole and only purpose of showing those things.

5. ———: ———: **Testimony of Attorney Who Drew Will: Privileged Communication.** An attorney who drew testatrix's will should be permitted to reveal the facts connected with his employment and the preparation and execution of the will and communications made to him by testatrix at and prior to the time he drew it. Such testimony is competent to show testatrix's state of mind, and cannot be excluded on the ground that such communications between attorney and client are privileged, since the privilege only exists in favor of the client, and can be waived either by the client or his representatives. Besides, the rule excluding confidential communications does not apply after the client's death, nor is there any privilege when a third party was present at the time the communication was made.

6. ———: ———: **Privileged Communication: Wife of Attorney Who Drew Will.** The rule excluding communications between attorney and client does not extend to the wife of the attorney who drew the will, where she was not an intermediary employed by him for the purpose of facilitating communications between him and his client; and, therefore, the wife, who was a friend of testatrix and merely accompanied her husband, who was called by testatrix to her home for a discussion of the questions involved in the preparation of the will, is competent to testify to communications made by testatrix during the interview.

Appeal from St. Louis City Circuit Court.—*Hon. John W. Calhoun*, Judge.

REVERSED AND REMANDED.

*Marshall & Henderson* for appellants.

(1) The law in this State as to what constitutes undue influence, such as will justify the setting aside of a will, is well settled. Tibbe v. Kamp, 154 Mo. 579; Hayes v. Hayes, 242 Mo. 169; Land v. Adams, 229 S. W. 158; Bennett v. Ward, 272 Mo. 671. (2) The circuit court erred in refusing to give the instruction asked by defendants at the close of the whole case. If it be possible (which we deny) that the plaintiffs made out a prima-facie case of undue influence, or confidential rela-

Canty v. Halpin.

tion, as shifted the burden of proof upon defendants, still we earnestly submit that defendants fully met the obligations thus cast upon them, and absolutely and completely overcame and disproved every allegation, assertion or presumption of undue influence or confidential relation, and that plaintiffs wholly failed to introduce any evidence whatever in rebuttal or answer to the case made by the defendants, and, therefore, the trial court erred in refusing to give the instruction. (3) The circuit court erred in admitting the testimony of Mary Canty, that she signed the deed, with the other children, conveying to Mrs. Halpin the property she had given to John before his death, upon her mother's oral agreement that when her mother died she (Mary) "would get my share when she made her will," and that she would be treated the same as the other girls. When defendants objected to the testimony because this is not a suit on a contract between the mother and the daughter, the plaintiffs' attorney replied that the testimony was not offered for that purpose, but for the purpose of showing the mental attitude of the mother to the witness. The court overruled the objection, and defendants duly excepted. It needs no argument or citation of authority to show that the ruling of the court was erroneous, and highly prejudicial to the defendants. It does not even tend to show the mental attitude of the mother to the daughter, but if it proves anything it shows a want of confidence of the daughter in her mother, which prompted her to request a contract before she would join in the conveyance from the other children to their mother. (4) It is true, of course, that communications between an attorney and client are privileged. But it is likewise true that communications between an attorney and his client, openly made before a third person, are not privileged. Railway Company v. Yeates, 67 Ala. 167; Greer v. Greer, 58 Hun, 251. An attorney employed by a testator to write his will is not disqualified from testifying to a confidential communication made in the presence of the subscribing witnesses to the will. In re McCarthy,

55 Hun, 7. An attorney at law, the draughtsman of a will, is competent to testify to statements made by the testator in the presence of the attorney and of the subscribing witnesses just before the execution of the will. In re Smith, 61 Hun, 101. (5) There was no confidential relation shown in this case between Julia and her mother. 8 Cyc. 564.

*Glendy B. Arnold* for respondent.

(1) Where a confidential relationship has been established, showing a chief beneficiary of the will had control and management of her mother's business and affairs, the law presumes undue influence, and places the burden upon such beneficiary to rebut it. Mowry v. Norman, 204 Mo. 173, 223 Mo. 463; Wendling v. Bowden, 252 Mo. 647. (2) "Undue influence need not be proven by direct and positive testimony, but it is sufficient if it is shown by, or can be inferred from, the facts and circumstances in evidence." Mowry v. Norman, 204 Mo. 193; Coldwell v. Coldwell, 220 S. W. 95. (3) "That one claimed to have unduly influenced a testator was not present when the will was drawn and signed did not exclude the idea that undue influence, which was shown to have been previously acquired, was not present or potential at the making of the will." Coldwell v. Coldwell, 220 S. W. 95; Mowry v. Norman, 204 Mo. 173, 193. (4) The character of the provisions of a will as being just or unjust, reasonable or unreasonable, may be considered by the jury as tending to throw light on the validity of the will. Mowry v. Norman, 223 Mo. 463, 470. (5) Declarations and statements of a testator, before or after the making of a will, tending to show the state of his feelings and mind towards disinherited children, or children grossly discriminated against, in his will, are admissible in evidence on the issue of undue influence. Rule v. Maupin, 84 Mo. 587; Thompson v. Ish, 99 Mo. 160; Bush v. Bush, 87 Mo. 480; Crowson v. Crowson, 172 Mo. 691; Coldwell v. Coldwell, 228 S. W. 95, 104.

(6) In a will contest where the plaintiffs make out a prima-facie case of undue influence, the court cannot direct a verdict for the defendants on the ground that defendants' rebuttal testimony is uncontroverted or unopposed by evidence offered by the palintiffs in surrebuttal. Gannon v. Gas Light Co., 145 Mo. 516; Mowry v. Norman, 204 Mo. 173, 191. (7) An attorney is not competent to testify as to what passed between him and his client, a testator, in regard to the making of a will, in contest. Sweet v. Owens, 109 Mo. 1; McKee v. Downing, 170 Mo. 115. (8) The presence of the attorney's wife, as his assistant, does not lift the veil of secrecy as to communications in her presence between the attorney and his client.

REEVES, C.—This is an action to contest the will of Margaret E. Halpin. The issue of testamentary incapacity was eliminated by the trial court, and the contest both below and here is over the question of undue influence. The contestants are Mary Canty and Jennie Boeckmann, their husbands, and the three minor children of Mrs. Boeckmann. The contestees are Julia Halpin and Kate Halpin and, with the first two named contestants, are the only surviving children of the said Margaret E. Halpin.

Mrs. Halpin died on July 22, 1919, and this suit was instituted in the Circuit Court of the City of St. Louis on August 9, 1919. The will in controversy was alleged to have been executed on January 22, 1914, and was probated August 5, 1919. Contestee, Julia Halpin, was the chief beneficiary under said will, and the petition charges that she, occupying a confidential and fiduciary relationship to her mother, the testatrix, exercised an undue influence over her in the execution of said will.

The contestees properly assumed the burden of proof in the first instance, and made their prima-facie case by showing the due execution of the will and that testatrix was then of sound mind. [Teckenbrock v. McLaughlin, 209 Mo. 533, l. c. 539, and cases cited therein.] There-

upon contestants offered testimony tending to prove an inequality in the value of property devised by the will to the contestants and contestees, such value being greatest in the property devised to Julia Halpin.

Mary Canty and Jennie Boeckmann, contestants, daughters of the testatrix, testified that prior to the execution of the will Julia "looked after the property, the repairs and troubles of real estate agents, tenants and matters of that sort, and she was supposed to do the banking business for our mother;" that testatrix "asked nobody but Julia" about her business affairs; that Julia attended to the property of testatrix, looked after it, gave orders and attended to everything. The testimony further tended to show that testatrix, during that time and thereafter, was a large woman with poor eyesight and with physical infirmities, but with good mind, and that she always signed the checks, though Julia looked after the collection of moneys arising from rentals on much real estate owned by her, and that Julia deposited such receipts in the bank to the credit of her mother. The property of testatrix consisted mainly of residence properties in the city of St. Louis, and during her lifetime she conveyed separate parcels of said properties, but not all, to her daughters, both contestants and contestees, and that such conveyances covered property mentioned in the will, but were not made contrary to the terms of the will, but in pursuance thereof, merely anticipating its utility for the same purpose.

Several years prior to the execution of the will contestants Mary Canty and Jennie Boeckmann had married and lived apart from testatrix. Julia and Kate remained unmarried and lived with testatrix. There was testimony tending to show that Julia supervised all of the business of testatrix, both before and after the execution of the will, and that she was "boss" of her mother's household, and that testatrix stood in awe of her. Contestees offered an abundance of testimony tending to disprove the allegations of the petition and in contradiction of the evidence of contestants.

The attorney, who drew the will, at the instance of contestants was not permitted to testify to any communications made to him by testatrix concerning it. Upon the issue submitted, namely, of undue influence, the jury found "that the paper writing produced and read in evidence was not the will of Margaret E. Halpin, deceased." After an unavailing motion for a new trial, contestees have duly prosecuted their appeal to this court, complaining that the question involved should not have been submitted to a jury; that they were injured by certain harmful evidence; that the court rejected competent and material evidence offered by them, and that the jury was confused by misleading instructions. Other facts will be noted in the course of the opinion.

I. The assignment that the trial court should have sustained appellants' demurrer, offered at the close of plaintiffs' case, cannot be properly urged. The general rule applicable to the state of the record, under such circumstances, is that by introducing testimony after the

**Demurrer.** instruction in the nature of a demurrer to the evidence has been overruled, the demurrant takes the risk of aiding plaintiffs' case, waives his demurrer, and cannot afterwards be heard to complain of its refusal. [Weber v. Stroebel, 236 Mo. l. c. 660; Burton v. Holman, 231 S. W. 630, and cases cited.]

II. The court properly overruled appellants' request for a peremptory instruction at the close of all the testimony. There was, some testimony tending to show undue influence on the part of Julia Halpin over

**Peremptory Instruction: Substantial Evidence.** the mind of the testatrix. This was chiefly found in the testimony of Mrs. Boeckmann, who not only testified to a rather helpless condition on the part of testatrix, but that she "was scared to death of that girl," and that Julia would not permit anyone to talk business to her mother, and that Julia told witness that she had gotten all she would get of her mother's property and that

she would see to it that witness got no more; that Julia would raise disturbances and get testatrix excited and that Julia "beat up" those of the household who did not do her will.

Mrs. Canty testified that "Julia made everybody mind over there;" that she went to her mother's house several times and "was scared to death to say anything," and that when she would say something she was informed that she "had nothing to say;" that she was married, and that she had no business to come there "to say anything;" that it was Julia who thus talked to her, and that on November 30, 1917, witness hired a machine and took testatrix back home after a visit; that when she got there her mother started crying, and that Julia said to her not to get worked up, that she had some insurance papers for testatrix to sign and that Julia gave her some papers, which she signed, and that witness found out subsequently that such papers were deeds and not insurance papers. There was substantial testimony, therefore, to submit the case to the jury on the question of undue influence. [Naylor v. McRuer, 248 Mo. 423; Grundmann v. Wilde, 255 Mo. 109; 39 Cyc. 681.]

III. Moreover, the testimony was sufficient to establish a confidential relation between testatrix and Julia. It appeared that Julia in effect managed the business of testatrix for some time prior to the execution of the will and continuously thereafter until her death. This shows a fiduciary relation and shifts the burden on the question of undue influence. [Byrne v. Byrne, 250 Mo. 632, l. c. 646; Grundmann v. Wilde, l. c. 116.]

Confidential Relation.

Under such circumstances the law presumes the bequest to have been made under the compulsion of undue influence and the burden is upon the recipient of the bounty to overcome such presumption (Burton v. Holman, 231 S. W. 630; Sittig v. Kersting, 223 S. W. 742, l. c. 748; Rayl v. Golfinopulos, 233 S. W. 1069), and such

presumption must be rebutted by testimony and the credibility of that rebutting testimony is for the jury. [Mowry v. Norman, 204 Mo. 173, l. c. 191; Gannon v. Laclede Gas Light Co., 145 Mo. 502.]

IV.  Complaint is made that it was prejudicial error to permit Mary Canty to testify that in a certain business transaction had with her mother testatrix had said that the said Mary Canty would get her share when she, testatrix, made her will.  This was before the making of the will, and was offered for the sole pur-pose of showing the state of mind of testatrix.  Wide latitude is permitted in contests of this character, and such testimony cannot be admitted for the truth of such statements, but solely and alone for the purpose of showing the mental state of the testatrix.  Such testimony is only material to show the state of affections or the condition of the mind of the testatrix, and is received as external manifestations of a mental condition and, unsupported by any other testimony, would not be admissible to show undue influence.  Here, however, such testimony, when considered in connection with other evidence, was admissible.  [Teckenbrock v. McLaughlin, supra, l. c. 549.]

State of Mind.

V.  We now come to a more serious proposition. Contestees called John B. Dempsey, an attorney, as a witness.  He had prepared the will for testatrix, and contestees sought to have him reveal the facts connected with his employment and the preparation and execution of the will.  Contestants objected on the grounds that such facts were privileged communications as being between an attorney and client.  The objection was sustained and such testimony excluded.  The court erred in excluding that testimony.  Contestants challenged by their action the due execution of the will.  They say that the testatrix had no will, but that the paper writing in controversy was the will of the contestees substituted

Attorney: Privileged Communication.

for the will of the deceased. In cases of this character the law permits a wide range in the matter of testimony and it becomes a matter of the highest importance to ascertain the state and condition of mind of deceased at the time of the execution of the will, and no one would be better qualified to present to the jury that condition of mind than the attorney who prepared the will for the deceased. The privilege only exists in favor of the client, and it is a right of the client and his representatives to waive the privilege, and moreover the rule excluding confidential communications does not apply after the client's death, in litigation between parties, all of whom claim under the client, and so where the question before the court involves the validity or genuineness of an alleged will, the attorney of the testatrix may testify as to matters relevant to the issue. 40 Cyc. 2308; Thompson v. Ish, 99 Mo. 160, l. c. 176, 177.] Furthermore, there was no privilege in this case because a third party was present. [40 Cyc. 2377.]

Contestants should not be permitted to challenge the validity of the alleged will on the grounds of undue influence and then seek to close the reservoirs of information against yielding up the very best and the most potent evidence.

VI. The court also erred in refusing to admit the testimony of Mrs. Virginia Dempsey, the wife of John B. Dempsey, the attorney who prepared the will. Mrs. Dempsey was a friend of the testatrix. Her husband was called by testatrix to her home to discuss the questions involved in the preparation of her will. Mrs. Dempsey accompanied him and was present during the interview. Mr. Dempsey had testified that he always had his wife accompany him when he made a visit in the evening, calling on a client, and for this reason the court excluded the testimony. This was error. Mrs. Dempsey was not an intermediary employed by her husband for the purpose of facilitating communications between attorney and client, and there-

*Wife of Attorney.*

fore the rule did not extend to her (40 Cyc. 2362), and she should have been permitted to have given all the facts of said interview.

It is not necessary to consider other questions raised by appellants.

For the errors above enumerated this case must be reversed and remanded for a new trial and it is so ordered. *Railey* and *White, CC.,* concur.

PER CURIAM:—The foregoing opinion of REEVES, C., is adopted as the opinion of the court. All of the judges concur; *James T. Blair, C. J.,* and *Elder, J.,* in the result.