STATE ex rel. GREAT AMERICAN
INSURANCE COMPANY et
al., Relators,

v.

Honorable Laurence R. SMITH, Judge,
Circuit Court, Jackson County,
Respondent.

No. 60174.

Supreme Court of Missouri,
En Banc.

March 13, 1978.

Rehearing Denied April 10, 1978.

John C. Risjord, Ronald K. Barker, Niewald, Risjord & Waldeck, Kansas City, for relators.

Gene A. DeLeve, Ronald S. Weiss, Berman, DeLeve, Kuchan & Chapman, Kansas City, for respondent.

DONNELLY, Judge.

This is an original action in prohibition.

On December 24, 1973, a restaurant and night club owned by Cannova Enterprises, Inc., was destroyed by fire. Relators had insurance in effect on the contents, leasehold improvements and for business interruption. Cannova and the loss-payee on the policies notified relators of the fire loss and furnished proofs of loss. Relators employed General Adjustment Bureau to investigate the origin of the loss. Attorney John C. Risjord was also employed to investigate the origin of the loss.

On May 31, 1974, relators denied the claim stating that the loss was of an incendiary origin. Prior to May 31, 1974, attorney Risjord wrote three letters to relators.

On August 9, 1974, Cannova and the loss-payee filed suit in the Circuit Court of Jackson County alleging that relators' refusal to pay is "vexatious and without reasonable cause * * *."

The controversy in this case involves an attempt by plaintiffs in the trial court to discover the contents of the three letters written by Risjord to relators.

On April 21, 1977, respondent judge made the following order:

"Plaintiffs having made oral motion to require Raymond Schurkamp, George Freeseman and William L. Mathiesen and their respective insurance companies to produce certain described documents on the taking of their depositions, and the Court having given full consideration to same,

"IT IS HEREBY ORDERED that each of aforementioned witnesses produce at the taking of his deposition, subject to the condition hereinafter stated, all documents, described in his subpoenae, that are dated May 31, 1974 and earlier, but is not required to produce those documents bearing a date subsequent to May 31, 1974.

"IT IS FURTHER ORDERED that, at the option of defendants' counsel, any of aforementioned documents required to be produced, may first be presented to this Court for viewing by this Judge, who reserves the right to exclude from presentation at deposition any portions of said documents with respect to which interests of justice require exclusion.

"The Court believes that aforementioned documents, required to be produced, are reasonably calculated to lead to the discovery of admissible evidence as related to the issue of defendants' vexatious refusal to pay and that plaintiffs have shown they have a substantial need of the materials in the preparation of their case and that they are unable without undue hardship to obtain the substantial equivalent of the materials by other means. Interests of justice require the documents to be produced notwithstanding claim of lawyer-client privilege except for any portions the Court deems should be excluded following inspection of the documents."

Relators applied for prohibition and we ordered the issuance of our preliminary rule.

Plaintiffs below assert they are entitled to discovery under Rule 56.01(b). Relators rely on the attorney-client privilege. The applicable law is as follows:

(1) In *State ex rel. Cain v. Barker,* 540 S.W.2d 50, 52 (Mo. banc 1976), this Court stated:

"The language of rule 56.01(b)(1) authorizes discovery of matters not privileged. This necessarily means that privileged matters, such as communications between attorney and client, are not discoverable unless the privilege is waived by the client."

(2) Section 491.060, RSMo 1969, reads in part as follows:

"The following persons shall be incompetent to testify:

&ast; &ast; &ast; &ast; &ast; &ast;

"(3) An attorney, concerning any communications made to him by his client in that relation, or his advice thereon, without the consent of such client;

" &ast; &ast; &ast;."

(3) In 8 Wigmore on Evidence, § 2320 (McNaughton rev. 1961) it is stated:

"§ 2320. Communications by the attorney to the client. That the *attorney's communications* to the client are also within the privilege was always assumed in the earlier cases and has seldom been brought into question. The reason for it is not any design of securing the attorney's freedom of expression, but the necessity of preventing the use of his statements as admissions of the client &ast; &ast;, or as leading to inferences of the tenor of the client's communications &ast; &ast; &ast;."

(4) In 8 Wigmore on Evidence, § 2322 (McNaughton rev. 1961) it is stated:

"§ 2322. Inference from claim of privilege; Judge to determine privilege. If a client party claims the privilege, the prevailing view—although there is a sharp split of opinion—is that no inference should be drawn against him as to the unfavorable nature of the information sought.

"The claim of privilege being made, the *trial judge determines* whether the facts justify the allowance of the claim. This follows from the general principle of the judicial function &ast; &ast; &ast;."

■ We conclude from the above that, even in a case involving alleged vexatious refusal to pay, the attorney-client privilege protects a letter written by an attorney to his client from discovery when the letter: (1) "concerns any communication made to him by his client" in the attorney-client relation; or (2) contains "his advice thereon"; or (3) could lead to "the use of his statements as admissions of the client"; or (4) could lead "to inferences of the tenor of the client's communications."

■ We note that on May 11, 1977, respondent judge stated to counsel that he was willing "that the three letters in question be produced so that the Court can inspect them in *in camera*." We believe this procedure should be followed. We have no reason to believe respondent judge will ignore the law set forth above in examining the letters and in determining whether the letters should be produced for examination by plaintiffs.

Accordingly, the preliminary rule in prohibition is quashed and the petition dismissed.

NORWIN D. HOUSER, Special Judge, concurs in separate concurring opinion filed.

HENLEY and SEILER, JJ., concur and concur in separate concurring opinion of NORWIN D. HOUSER, Special Judge.

FINCH, J., dissents in separate dissenting opinion filed.

BARDGETT and RENDLEN, JJ., dissent and concur in separate dissenting opinion of FINCH, J.

MORGAN, C. J., not sitting.

NORWIN D. HOUSER, Special Judge, concurring.

I concur in the opinion written by Judge Donnelly, which defines the scope of the attorney-client privilege, and specifies what subject matter in letters from the attorney to the client is thereby protected, but which does not denegrate or detract from that well-established principle. It may be useful to point out that the opinion does not present-

ently require revelation of the contents of the three letters to parties litigant, or approve the use of the material as evidence. The opinion simply subjects the three letters to judicial scrutiny for the limited purpose of determining whether their contents, in whole or in part, are of such a nature that they must be revealed and made available during the taking of depositions for use at the trial. The opinion merely holds that the question of privileged communication *vel non* is one of law for the trial court to determine. *Bussen v. Del Commune*, 239 Mo.App. 859, 199 S.W.2d 13, 21[12] (1947). I would add that if, upon examination by the trial court, the letters recite factual matter relating to the origin of the fire—developed by relator's attorney or his staff from outside sources during their investigation—the attorney-client privilege will not protect such factual matter from discovery. *State v. Cloyd*, 394 S.W.2d 408, 411[6] (Mo. banc 1965); *Merrin Jewelry Co. v. St. Paul Fire and Marine Ins. Co.*, 49 F.R.D. 54 (S.D. N.Y.1970); *Bird v. Penn Central Company*, 61 F.R.D. 43 (E.D.Pa.1973); *Bourget v. Government Employees Ins. Co.*, 48 F.R.D. 29 (D.Conn.1969); *Chitty v. State Farm Mutual Ins. Co.*, 36 F.R.D. 37 (E.D.S.C. 1964).

FINCH, Judge, dissenting.

I respectfully dissent. The principal opinion approves an order requiring en camera production of the three letters from attorney John C. Risjord to relators wherein the court, pursuant to rules laid down in the principal opinion, would determine what parts, if any, of said letters must be disclosed to plaintiffs in the suits on the fire insurance policies. I would direct the court to conduct a hearing to determine whether, at the time the letters were written, the relation of attorney and client existed between Risjord and those to whom the letters were directed with respect to the subject matter of the communications. If the court determines these questions in the affirmative, I would hold that the communications were protected by the lawyer-client privilege and that production of the letters should not be required. Of course, this

would not be true if it is determined that the relationship of attorney and client with respect to the subject matter of the communications did not exist at the time the letters in question were written.

This procedure would be in harmony with what the court said in *Bussen v. Del Commune*, 239 Mo.App. 859, 199 S.W.2d 13 (1947), in discussing the propriety of the action of the trial court in admitting in evidence the testimony of a lawyer concerning a note which had been addressed to him by the late husband of defendant. In upholding the admission of that note in evidence the court said, 199 S.W.2d at 20–21:

"Our statute, which is declaratory of the common-law rule, provides that an attorney shall be incompetent to testify concerning any communication made to him by his client in that relation, or his advice thereon, without the consent of such client. Sec. 1895, R.S.Mo. 1939, Mo. R.S.A. § 1895.

"It is thus to be observed that for the rule of privilege to apply, the relation of attorney and client must have actually existed between the parties at the time the communication was made or the advice given. *State ex rel. Chicago, R. I. & P. R. Co. v. Wood*, 316 Mo. 1032, 292 S.W. 1033. Moreover, such relation must have existed as to the subject matter of the communication or advice (*C. Aultman & Co. v. Daggs*, 50 Mo.App. 280); and the communication, if it is to be privileged, must have been made to the attorney in his professional capacity, and on account of the relation of attorney and client. *State ex rel. Chicago, R. I. & P. R. Co. v. Wood*, supra. If such relation existed, the privilege is not confined to communications or advice in connection with pending or anticipated litigation, but it extends to all matters where the attorney was consulted by his client for professional advice or service in the course of the employment. *Johnson v. Sullivan*, 23 Mo. 474.

"The question of whether the note was a privileged communication was one of law for the court (*Hull v. Lyon*, 27 Mo. 570); and to enable it to rule upon the question, the court proceeded to examine Mr. Boverie in regard to his relations with Del Commune, and the circumstances under which the note had come into his possession."

It should be noted that the inquiry was not directed to whether some part or parts (or all) of the note might be admissible in spite of the attorney-client privilege by reason of the nature of such content. Instead, the determinative issue was whether the relationship of attorney and client existed between the parties at the time of the communication with reference to the subject matter of the communication. The court concluded from the evidence, based on the finding of the trial court, that the note had not been communicated on the basis of an attorney-client relationship. Consequently, it was not a privileged communication.

As discussed in 8 Wigmore on Evidence § 2292 (McNaughton rev. 1961), the *Bussen* holding that our statute is declaratory of the common law is in accord with numerous jurisdictions. The significance of this point is recognized to be that the terms of the statute are not intended to serve as a literal test for the existence of the privilege but rather to name and recognize the privilege. The logical development of the privilege by judicial decision is thus fully contemplated.

The reasoning of *Bussen* is not in conflict with the authority cited in the principal opinion. It should be noted that the quotation from Wigmore at § 2320 addresses two separate matters—the rule and the underlying rationale therefor. It is not by accident that the rule there stated is not said to be limited to the two types of statements which warrant protection. The rule is plainly stated to be that the attorney's communications to the client also fall within the privilege (when the proper relationship and subject matter are present); yet the reasons Wigmore advances for the rule address only communications which by their content could be used as admissions of the client or indicate the tenor of the client's communication. The rule does not focus upon the

content of the communication because such inquiry necessarily leads to disclosure of the statements to be protected, at least to the court and possibly erroneously to others. This would reintroduce an element of uncertainty which may inhibit a free exchange of information and advice between attorney and client.

By focusing instead on the existence of the relationship and general subject matter of the communication, communications which justify the privilege are fully protected without any significant impairment of legitimate inquiry. The likelihood that communications made under circumstances justifying a finding of privilege will be such as to fall within the justification for the rule is very high. The likelihood that the communication will contain relevant and useful information which does not fall within the justification is too low to justify the potential mischief of an inquiry into content.

It may be that under the standards set out in the principal opinion the trial court would hold, after an en camera examination, that the letters are privileged and need not be exhibited to plaintiffs. However, if the court should reach a contrary conclusion, difficult problems arise. Once the letters or any portions thereof are disclosed to plaintiffs, then, to use an old expression, the cat is out of the bag. It will not be a satisfactory solution to say that relators could test on appeal the propriety of that ruling, because a decision on appeal that the trial court was wrong and that the letters were protected by the attorney-client privilege would not again make confidential that which meanwhile has been made known to others including plaintiff. There is no way to put the cat back in the bag. Therefore, unless the court would provide relators with an immediate en camera appellate review of the propriety of the trial court's ruling that some part or parts of the letters must be revealed, relators will have no meaningful appellate review of the trial court's decision to require disclosure of what is claimed to be protected by the attorney-client relationship and privilege.

The communications which plaintiffs seek in this case are written but whatever principle is established in this case will apply also to oral communications between attorney and client. If an en camera inspection of these letters by the trial court is to be approved and directed, a similar procedure would apply in another case wherein the communications between lawyer and client were oral. In that instance, supposedly, the trial judge would require counsel or client, or both, to appear before him en camera and testify as to the oral communications sought by plaintiff in such a case. Presumably, the court (since counsel for plaintiff would not be in attendance at said en camera hearing) would examine the counsel or client, or both, under oath and then decide whether all or any portions of such communications testified to before him would be disclosed to the plaintiffs in such case. I find such procedure unacceptable.

Furthermore, the procedure authorized in the principal opinion would result in the trial judge, in effect, taking scissors and excising any part considered to be confidential and not subject to disclosure, and then ordering the remainder released to the party opponent. This might well result in some statements, taken out of context of the whole communications, being disclosed and used against the client. As a result, the client might be forced, in order to avoid a distorted picture, to disclose the remainder of the communication, even though held to be privileged. Such a result is neither desirable or justified.

I have read the transcript in this case. Plaintiffs have obtained copies of the investigative reports of the adjustment firm and have received other information by various discovery procedures. I find nothing in that transcript that convinces me that we should embark on a new course in Missouri which, in my judgment, will at the very least impair and perhaps ultimately destroy the attorney-client privilege which existed at common law and which is further preserved and protected by § 491.060 RSMo 1969.