STATE ex rel. GREAT AMERICAN INSURANCE CO. et al., Relators,

v.

The Honorable Laurence R. SMITH, Judge of the Circuit Court of Jackson County, Missouri, Sixteenth Judicial Circuit, Division 12, Respondent.

No. 60812.

Supreme Court of Missouri, En Banc.

Dec. 18, 1978.

John C. Risjord, Ronald K. Barker, Kansas City, for relators.

Gene A. DeLeve, Ronald S. Weiss, Kansas City, for respondent.

Ernest H. Fremont, Jr., Wm. Dirk Vandever, Russell W. Baker, Jr., Neil Gerstandt, Dennis D. Palmer, George Leonard, Kansas City, for amicus curiae.

FINCH, Judge.

This original action in prohibition is the second such proceeding in this court for the purpose of resolving the issue of whether three letters concerning fire loss claims, written by an attorney to insurance companies he represents (relators), are protected from discovery by the attorney-client privilege. We make permanent our previously issued provisional rule in prohibition.

On December 24, 1973, a restaurant and nightclub owned by Cannova Enterprises, Inc. (Cannova) was destroyed by fire. Cannova had in effect fire insurance policies written by relators which covered the contents, leasehold improvements and business interruption for Cannova's business premises. After the fire Cannova and Mid-Continent National Bank of Kansas City, Missouri (Mid-Continent), the loss payee in the described policies, notified relators of the fire loss and damage and furnished proof of loss to each relator.

Relators employed the General Adjustment Bureau (GAB) to investigate the loss. Attorney John C. Risjord of the law firm of Niewald, Risjord and Waldeck was then contacted and employed to assist in investigating the origin of the loss and to represent relators in connection with the claims being asserted against them by Cannova and Mid-Continent.

On May 31, 1974, relators rejected the proofs of loss by letter from Risjord to Gene DeLeve, attorney for Cannova and Mid-Continent. The claims were denied on the ground that the loss was of incendiary origin.

On August 9, 1974, Cannova and Mid-Continent filed suit against relators, alleging that their refusal to pay the amounts due under the fire insurance policies was vexatious and without reasonable cause. In Counts I and II they sought to recover the face amounts of the policies plus damages, attorney's fees and interest.[1] Relators' answer, filed by attorney Risjord, raised the affirmative defenses of arson and false swearing.

In response to written interrogatories, submitted under Rule 56.01(b),[2] each of the relators identified the person who made the decision on its behalf to deny the claims submitted by Cannova and Mid-Continent. Depositions of those individuals were scheduled and they were commanded by subpoenas duces tecum to produce all files, papers, documents, records and correspondence concerning the investigation of the fire and

---

1. There was a third count by Cannova against relators and the law firm of Niewald, Risjord and Waldeck wherein recovery was sought on the basis that statements in the May 31, 1974, letter denying the claim because the loss was of incendiary origin were libelous. The trial court sustained a motion for summary judgment as to this claim.

2. All references to rules are to V.A.M.R.

their action thereon. During the depositions, each witness was asked what he considered before denying the claim. Each testified that three letters written by attorney Risjord to relators were included in the material reviewed. These consisted of a letter dated February 12, 1974, an undated letter which Risjord testified was written during March or April, 1974, and a letter dated May 28, 1974. Production of all the material reviewed by the witnesses was then requested. All has since been furnished except the three letters from Risjord which, on advice of counsel, relators refused to furnish for the reason that they were communications protected by the attorney-client privilege.

Counsel for Cannova and Mid-Continent next moved for a court order directing the witnesses to produce the three letters from Risjord. A hearing was held, after which the court entered this order:

"Plaintiffs having made oral motion to require Raymond Schurkamp, George Freeseman and William L. Mathiesen and their respective insurance companies to produce certain described documents on the taking of their depositions, and the Court having given full consideration to same,

"IT IS HEREBY ORDERED that each of aforementioned witnesses produce at the taking of his deposition, subject to the condition hereinafter stated, all documents, described in his subpoenae, that are dated May 31, 1974 and earlier, but is not required to produce those documents bearing a date subsequent to May 31, 1974.

"IT IS FURTHER ORDERED that, at the option of defendants' counsel, any of aforementioned documents required to be produced, may first be presented to this Court for viewing by this Judge, who reserves the right to exclude from presentation at deposition any portions of said documents with respect to which interests of justice require exclusion.

"The Court believes that aforementioned documents, required to be produc-

ed, are reasonably calculated to lead to the discovery of admissible evidence as related to the issue of defendants' vexatious refusal to pay and that plaintiffs have shown they have a substantial need of the materials in the preparation of their case and that they are unable without undue hardship to obtain the substantial equivalent of the materials by other means. Interests of justice require the documents to be produced notwithstanding claim of lawyer-client privilege except for any portions the Court deems should be excluded following inspection of the documents."

Following this order relators sought prohibition. This court, in *State ex rel. Great American Insurance Company v. Smith*, 563 S.W.2d 62 (Mo. banc 1978), announced standards for determining whether communications are protected from discovery by the attorney-client privilege and held that the trial judge should examine the letters in camera to determine whether, under the standards announced, the letters should be produced for examination by Cannova and Mid-Continent. Those standards were based on 8 J. Wigmore, Evidence §§ 2320, 2322 (McNaughton rev. 1961) and § 491.-060.[3]

Following that decision, respondent directed relators to deliver the three letters to him for in camera inspection. Pursuant to that order, the letters were produced at a hearing before respondent on May 22, 1978. The transcript of that proceeding shows that Risjord stated that after the fire he was contacted by GAB and the relators and asked to represent relators; Risjord also said that the three letters in question were written in response to requests from relators "to advise them concerning my opinion as to the investigation, where they stood on the law, and to keep them periodically advised and give them my opinion and advice on the subject of a claim which was being made * * *." Risjord's explanation was not questioned at the hearing by counsel for respondent and nothing to the contrary was presented to the court.

---

3. All statutory references are to RSMo 1969 unless otherwise indicated.

On the day following that hearing, respondent made findings and conclusions with reference to the letters. These findings and conclusions were set out in a communication to counsel as follows:

"Gentlemen:

"On May 22, 1978, Mr. Risjord delivered to me (the Court) copies of the three letters in question (written by Mr. Risjord to the defendant insurance companies), pursuant to this Court's order of May 15, 1978, for *in camera* inspection by me.

"I have read these letters and find that they basically contain:

1. Results of investigation made on behalf of Mr. Risjord and his firm.
2. Conclusions, opinions and impressions of Mr. Risjord and his firm concerning the results of the investigation and the handling of the case.
3. Recommendations of Mr. Risjord and his firm concerning action to be taken with reference to the case.

"I do not find in any of the letters any reference to any information given to Mr. Risjord or his firm by their clients, the defendant insurance companies, or any reference to communication made to the firm by the insurance companies. Nor do I find any indication of any advice given to the companies concerning any communication made by the companies to their attorneys.

"Using the majority opinion of the Supreme Court of Missouri *en banc* as a guide, I do *not* find in any of the three letters any matter to be protected by the attorney-client privilege, to-wit, nothing that '(1) "concerns any communication made to him by his client" in the attorney-client relation; or (2) contains "his advice thereon"; or (3) could lead to "the use of his statements as admissions of the client"; or (4) could lead "to inferences of the tenor of the client's communications." '

"Accordingly, I plan to deliver to Mr. Weiss, attorney for the plaintiff, copies of the three letters in their entirety. However, since Mr. Risjord has indicated he might seek some extraordinary relief in the matter, I will hold up delivering the copies until June 12, 1978.

Respectfully,

Laurence R. Smith,
Judge, Div. 12"

Thereafter, relators again sought prohibition in this court. We issued our provisional rule in prohibition to which a return was filed. We then invited counsel to make suggestions in their briefs as to (1) what changes, if any, should be made in the rule announced in our prior decision reported at 563 S.W.2d 62, and (2) what procedure should be utilized at the appellate level to review in camera decisions of a trial court as to whether particular attorney-client communications are privileged. The court also granted the Missouri Bar's request to file a brief amicus curiae in the case. After considering those briefs and the transcript in this case, as well as the briefs and transcript in the first prohibition proceeding, we have decided to overrule our prior decision, reported at 563 S.W.2d 62, and to hold that the three letters from Risjord to relators are privileged and not subject to discovery.

■ The attorney-client privilege dates from the reign of Elizabeth I of England. *See* 8 J. Wigmore, *supra*, § 2290. In recognition of that common law privilege, the legislature has enacted a statute, § 491.060, which provides, in part:

"The following persons shall be incompetent to testify:

* * * * * *

(3) An attorney, concerning any communication made to him by his client in that relation, or his advice thereon, without the consent of such client;"

The foregoing section has been held in a court of appeals opinion to be declaratory of the common law rule. *Bussen v. Del Commune,* 239 Mo.App. 859, 199 S.W.2d 13 (1947). We agree that it should be so construed. The statute does not limit or diminish the common law rule.

There are two prevailing views as to the scope of the attorney-client privilege, following an emphasis on two different funda-

mental policies. Dean Wigmore emphasized the fundamental societal need to have all evidence having rational probative value placed before the trier of facts in a lawsuit. While he argued against Jeremy Bentham's suggestion that the attorney-client privilege be abolished, he regarded it as an exception to what he considered to be the more fundamental rule, and one which "ought to be strictly confined within the narrowest possible limits consistent with the logic of its principle." 8 J. Wigmore, *supra,* § 2291 at 554.

A different fundamental policy is emphasized by Sedler & Simeone in "Privileges in the Law of Evidence: The Realities of Attorney-Client Confidences," 24 Ohio St.L.J. 1 (1963). While the authors acknowledge Wigmore's view of attorney-client privilege as an exception to the policy of disclosure of all evidence, they view confidentiality of communications between attorney and client as the more fundamental policy, to which disclosure is the exception. This view is based in part on the duty of a lawyer to preserve a client's confidences, subject to a very limited privilege of disclosure, which is imposed by the Canons of Professional Ethics. The greater societal need for confidentiality is attributed to the relationship of lawyer to client in giving advice—a relationship in which secrecy has always been considered important. In support of a broad attorney-client privilege, the article states at p. 3:

> "As long as our society recognizes that advice as to matters relating to the law should be given by persons trained in the law—that is, by lawyers—anything that materially interferes with that relationship must be restricted or eliminated, and anything that fosters the success of that relationship must be retained and strengthened. The relationship and the continued existence of the giving of legal advice by persons accurately and effectively trained in the law is of greater societal value, it is submitted, than the admissibility of a given piece of evidence in a particular lawsuit. Contrary to the implied assertions of the evidence authorities, the heavens will not fall if all relevant and competent evidence cannot be admitted."

(Footnotes omitted.) *See* also Louisell, "Confidentiality, Conformity and Confusion: Privileges in Federal Court Today," 31 Tul.L.Rev. 101 (1956).

We find this analysis of the fundamental policy underlying attorney-client privilege to be preferable to that of Wigmore. There clearly is a societal need for persons to be able to employ and consult with persons trained in the law for advice and guidance as to legal matters. As recognized by Sedler & Simeone, confidentiality of the communications between client and attorney is essential for such relationships to be fostered and to be effective. It was so considered at common law as shown by the following from the case of *Annesley v. Earl of Anglesea,* 17 How.St.Tr. 1139 (Ex. 1743), in which the Honourable Mr. Baron Mounteney said at 1241:

> "[A]n increase of legal business, and the inability of parties to transact that business themselves, made it necessary for them to employ . . . other persons who might transact that business for them. That this necessity introduced with it the necessity of what the law hath very justly established, an inviolable secrecy to be observed by attornies, in order to render it safe for clients to communicate to their attornies, all proper instruction for the carrying on those causes which they found themselves under a necessity of intrusting to their care."

The nature and complexity of our present system of justice and the relationships among people and between the people and their government make the preservation and protection of the attorney-client privilege even more essential. If this is to be accomplished, when one undertakes to confer in confidence with an attorney whom he employs in connection with the particular matter at hand, it is vital that all of what the client says to the lawyer *and* what the lawyer says to the client to be treated as confidential and protected by the attorney-client privilege. This is what a client ex-

pects. A rule of attorney-client privilege broad enough in scope to achieve this goal was adopted by the influential American Law Institute. ALI Model Code of Evidence, Rule 209(d) (1942) provides:

"As used in Rules 210 to 213,[4]

\* \* \* \* \* \*

(d) 'confidential communication between client and lawyer' means information transmitted by a voluntary act of disclosure between a client and his lawyer in confidence and by a means which, so far as the client is aware, discloses the information to no third persons other than those reasonably necessary for the transmission of the information or the accomplishment of the purpose for which it was transmitted.

\* \* \* \* \* \*

*Comment on Clause (d)*:

A communication means information transmitted voluntarily by any means; to be confidential it must be transmitted in confidence and in such a way that it will not, to the knowledge of the client, be disclosed to third persons to whom disclosure is not reasonably necessary to make the communication effective or to accomplish its purpose. *Communication between client and lawyer includes not only a communication from client to lawyer but also a communication from lawyer to client.*" (Emphasis supplied.)

The Wigmore approach, adopted in our decision reported at 563 S.W.2d 62, is narrower than that of the ALI Model Code of Evidence. It would protect the confidentiality of all of what the client says to the lawyer but would not protect all of what the lawyer says to the client. Of the lawyer's statements to his client, it would protect only (1) advice by the attorney concerning a communication to him by his client, (2) anything the lawyer said which could be an admission of his client, or (3) anything said by the lawyer that would lead to infer-

ences concerning the tenor of what the client had said to him.

We are of the opinion that the Wigmore approach does not provide enough protection for the confidentiality of attorney-client communications to accomplish the objective for which the privilege was created and now exists. Under the Wigmore approach, not all of a lawyer's advice is confidential, and statements by the lawyer which are not in the nature of advice are totally unprotected, except to the extent that they disclose what the client has said. This is demonstrated by the trial judge's analysis of the Risjord letters wherein he advised that he would deliver copies of the Risjord letters to counsel for Cannova. He stated that he did not find in the letters *any reference to information given to the attorney by the insurance companies* and the Risjord letters *did not mention any communication he had received from the companies.* The letter then said, "Nor do I find any indication of any advice given to the companies *concerning any communication made by the companies to their attorneys."* *In other words, anything said by the attorney to his clients about the matter he was handling for them would not be treated as confidential unless it was advice on information actually conveyed by the clients to the attorney or what was said would disclose what the clients had told the attorney.* All other consultation, opinion and advice is not protected under the Wigmore view.

■ When a client goes to an attorney and asks him to represent him on a claim which he believes he has against someone or which is being asserted against him, even if he as yet has no knowledge or information about the claim, subsequent communications by the attorney to the client should be privileged. Some of the advice given by the attorney may be based on information obtained from sources other than the client. Some of what the attorney says will not actually be advice as to a course of conduct

---

4. Rule 210 actually establishes the attorney-client privilege, Rules 211 and 212 provide for exceptions in certain instances, Rule 213 provides for termination and Rule 231 covers waiver. Rules 211, 212, 213 and 231 are not involved in the issue presented by this case.

to be f⌐llowed. Part may be analysis of what is known to date of the situation. Part may be a discussion of additional avenues to be pursued. Part may be keeping the client advised of things done or opinions formed to date.[5] All of these communications, not just the advice, are essential elements of attorney-client consultation. All should be protected.[6]

This does not mean that discoverable factual information can be made privileged by being recited by the attorney or the client in their confidential communications. Only the actual attorney-client communications are privileged. For example, in this case the relators had an investigation of the fire made by GAB which made various reports to relators. In addition, the FBI conducted surveillance of persons preceding the fire at Cannova's restaurant on December 24, 1973, made further investigation after the fire, and submitted a written report covering that surveillance and investigation to Dr. McNamara, then Kansas City Chief of Police, on January 18, 1974. A copy of that report was obtained by Risjord. It and the GAB reports were furnished to Cannova pursuant to its discovery efforts. If these had been attached to or discussed in the letters from Risjord to relators, the fact that the attorney's letters would be privi-

leged would not cause the GAB reports or the FBI letter to become protected by the attorney-client privilege. They still would be discoverable under Rule 56.01(b).[7]

The scope of discovery under existing rules and decisions is sufficiently comprehensive to afford parties to litigation ample means of securing factual and other data needed for preparation and trial of a case.[8] In this case it has enabled Cannova to obtain the GAB investigative reports, photographs, expert reports, investigatory reports by arson specialists, names of witnesses, and other items including the FBI report to the Chief of Police of Kansas City. Cannova also has taken the deposition of the FBI agent as well as representatives of relators. *The only things sought but not obtained by Cannova are the three Risjord letters to relators.* Those are not sought to provide Cannova with information as to how the fire occurred or with names of potential witnesses with knowledge as to how the fire occurred. Cannova wants these letters to learn what Risjord said to his clients about the claims he had been employed to handle on their behalf. This information is requested for use against relators on Cannova's claim for vexatious delay. Both Cannova's brief and an inter-

5. Smith, "Avoiding Lawyer Malpractice Through Communication Skill" (pts. 1–2), 34 J.Mo.B. 148, 246 (1978).

6. Judge Seiler's dissent speaks of efforts to protect the "preserve" of lawyers and suggests at least inferentially that this is the purpose of protecting all of what the lawyer says to the client as well as what the client says to the lawyer. That is not the objective of the privilege or of this opinion. Instead, as the opinion states, it is to make it possible for people to employ and confer with one trained in the law and to do so in confidence. The privilege is for the benefit of the client, not the lawyer.

The dissent also states that this opinion will greatly expand the attorney-client privilege as it has existed in Missouri for one hundred years. No authority is cited to support that contention and none exists. As a matter of fact, this opinion does not broaden the scope of the attorney-client privilege as it has existed and been applied in Missouri.

7. This case does not involve materials claimed by relators to be exempt from discovery as

work product under Rule 56.01(b)(3). Hence, we do not deal with the work product question.

8. Judge Seiler's dissent argues that "[t]he broadened scope of attorney-client privilege established by the proposed opinion will dismantle a good part of the scope of Missouri discovery" and that factual material obtained by the attorney and reported to his client "would become privileged and not discoverable." It concludes that "[l]awyers are being presented with a legitimate way to avoid disclosing what has up till now been discoverable facts." Such contention shows a misreading of this opinion. The privilege is limited to protecting attorney-client *communications*. For example, the copy of a letter from the FBI to the chief of police, which copy was obtained by Risjord, was not protected by the privilege and was discoverable. If Risjord had obtained names of witnesses or taken statements which were furnished to the client, the names and the statements themselves would not be protected by the attorney-client privilege nor insulated by this opinion.

change between the court and counsel for Cannova during oral argument of this case show that this is true:

> "Member of Court: From what you've just said, it sounds to me like you are directly attempting to get whatever opinion and advice Mr. Risjord gave to his client, and that you are not just trying to get the results of an investigation. Am I correct?
>
> Counsel: That is correct as long as his advice in the way it's expressed does not carry with it a disclosure of information that the client gave to the lawyer.
>
> Member of Court: So that if he had said in the letter or orally told the client, having considered all of the information that I have at hand in this matter I believe that the fire was of incendiary origin and that the insured did it and I believe that he's not worthy of belief and I therefor believe you ought not to pay the client.
>
> Counsel: Yes, I think we're entitled to that opinion * * *."

Cannova is not entitled to Risjord's opinion and advice. It is not entitled to examine these three letters.

In this case, it is clear that Risjord was employed to represent relators in the handling and defense of the claims of Cannova and Mid-Continent arising out of the December 24, 1973 fire. There is no question but that the three letters Risjord wrote to relators pertained to these matters in which he had been employed. Risjord so stated and the court's findings as set out in the letter of April 21, 1977, so show. If this were not so, we would direct the court to conduct a hearing and examine representatives of relators or Risjord or both to determine whether at the time the letters were written, the relation of attorney and client regarding the insurance claims existed, and whether the letters pertained to the matters for which Risjord had been employed. If either answer were in the negative, the privilege would not apply.

This procedure would be in harmony with *Bussen v. Del Commune,* 239 Mo.App. 859, 199 S.W.2d 13 (1947), in which the court discussed the propriety of the trial court's action in admitting into evidence a lawyer's testimony concerning a note which had been addressed to him by the late husband of defendant. In upholding the admission of that note into evidence, the court said, 199 S.W.2d at 20–21:

> "Our statute, which is declaratory of the common-law rule, provides that an attorney shall be incompetent to testify concerning any communication made to him by his client in that relation, or his advice thereon, without the consent of such client.
>
> "It is thus to be observed that for the rule of privilege to apply, the relation of attorney and client must have actually existed between the parties at the time the communication was made or the advice given. Moreover, such relation must have existed as to the subject matter of the communication or advice; and the communication, if it is to be privileged, must have been made to the attorney in his professional capacity, and on account of the relation of attorney and client. If such relation existed, the privilege is not confined to communications or advice in connection with pending or anticipated litigation, but it extends to all matters where the attorney was consulted by his client for professional advice or service in the course of the employment.
>
> "The question of whether the note was a privileged communication was one of law for the court; and to enable it to rule upon the question, the court proceeded to examine Mr. Boverie in regard to his relations with Del Commune, and the circumstances under which the note had come into his possession." (Footnotes omitted.)

It should be noted that the inquiry was not directed to whether part or all of the note might be admissible in spite of the attorney-client privilege by reason of the nature of its content. Instead, the determinative issue was whether the relationship of attorney and client existed between the parties at the time of the communication

with reference to the subject matter of the communication. The court concluded from the evidence, based on the finding of the trial court, that the note had not been communicated as a part of an attorney-client relationship. Consequently, it was not a privileged communication.

We recognize that in some of the federal cases cited by Cannova the court has approved the utilization of an in camera examination by the court of attorney-client communications to determine how much, if any, thereof shall be made discoverable under the Wigmore approach. *Bird v. Penn Central Company,* 61 F.R.D. 43 (E.D.Pa. 1973), is such a case. However, no state court decision approving or adopting that procedure has been cited, and we have found none. We have concluded that we should not adopt such a rule in this case. The harm to the traditional attorney-client relationship which could result from permitting a trial judge to interrogate a lawyer or his client to learn what the attorney said in their conferences, or to examine the lawyer's letters to ascertain what he said to the client therein, in order to determine what portions thereof could be made available to the other parties under the Wigmore test could, and we believe would, be considerable. It should not be permitted.

We make permanent our provisional rule in prohibition.

MORGAN, C. J., and BARDGETT, RENDLEN and SIMEONE, JJ., concur.

DONNELLY, J., dissents in separate dissenting opinion filed.

SEILER, J., dissents in separate dissenting opinion filed.

DONNELLY, Judge, dissenting.

In my view, the *primary* concern of the judicial process is that we seek the truth and then do justice. Deviations from this goal should not constitute "the more fundamental policy." The principal opinion makes paramount the protection from disclosure of what an attorney says to his client. I cannot agree.

I respectfully dissent.

SEILER, Judge, dissenting.

In almost every instance, in my view, were a lawyer asked to disclose what advice he gave his client, a Missouri trial judge would sustain the objection to the question, based on privilege. I believe law practice has been conducted on this basis in Missouri for years, and I see nothing in *State ex rel. Great American Insurance Company v. Smith,* 563 S.W.2d 62 (Mo. banc 1978) which will, as a practical matter, change the situation.

But there are a few situations where a lawyer's advice is not privileged unless it fits the limitations of the statute, § 491.060, exactly. One such situation is where the insured is suing on the policy, as here, and is claiming damages for vexatious refusal to pay. Suppose, for example, that Mr. Risjord's three letters advised relator not to pay the claim because he mistakenly believed the proof of loss was filed a day late and the insurer acted accordingly. Why shouldn't the insured be able to discover this fact and use it against the insurer? What is there about permitting discovery of this fact which would in any way hinder prospective clients from consulting lawyers and making a complete disclosure of the facts to counsel?

The proposed opinion, however, makes everything that takes place from lawyer to client privileged. All communications, not just advice, are to be protected and privileged.

The proposed opinion cites *Bussen v. Del Commune,* 239 Mo.App. 859, 199 S.W.2d 13 (1947) as supporting the proposition that the determinative issue with respect to whether or not a communication is privileged is whether the relationship of attorney and client existed between the parties at the time of the communication with reference to its subject matter. Since the relationship did not exist in the *Bussen* case, it was not a privileged communication; ergo, since it does exist in the present case (Risjord concededly was attorney for relators), the communication is privileged.

This view ignores the important fact that the communication under examination in the *Bussen* case and the context, therefore, in which the court's language must be considered, was a communication *from the alleged client* to the lawyer, which is why, under the statute (then § 1895, RSMo 1939) it would have been privileged had the attorney-client relationship been found to exist. Mrs. Del Commune was urging that "the note indicates on its face that it was addressed to Mr. Bovarie in his professional capacity, and that it consequently constituted a privileged communication between attorney and client", 199 S.W.2d at 20. The *Bussen* decision is not authority for the proposition that if the attorney-client relationship exists, any communication by the attorney to the client is privileged, as contended by the proposed opinion in the present case. The *Bussen* case is authority only for the proposition that if the relationship does exist, then a communication *by the client to the lawyer* is privileged, but that is not what we have before us at the moment.

The proposed opinion also relies heavily on the law review article in 24 Ohio St.L.J. 1, written in 1963, by Professors Sedler and Simeone (now a judge of this court) which frankly states the view that anything that materially interferes with the attorney-client relationship is to be restricted or eliminated and anything that fosters its success is to be retained and strengthened and expresses concern that the "preserve" of lawyers is constantly being entered by other professions. In my opinion, our view as *judges* must be broader than the protection of a "preserve". Not long ago this court saw fit to create an "insured-insurer" privilege. *State ex rel. Cain v. Barker,* 540 S.W.2d 50 (Mo. banc 1976). Now we are about to expand greatly the attorney-client privilege. We keep making it harder for the facts to be ascertained. We have gotten along all right in Missouri for well over one hundred years with the attorney-client privilege as it was until the present decision. There is no need to broaden it at this late date. It may be, as the above article states, that "the heavens will not fall if all relevant and competent evidence cannot be admitted", *id.* at 3, but by the same token, people will not stop consulting lawyers if the attorney-client privilege is not broadened, either.[1]

The broadened scope of attorney-client privilege established by the proposed opinion will dismantle a good part of the scope of Missouri discovery. Under rule 56.-01(b)(1) discovery is limited to matters "not privileged." Suppose Mr. Risjord, or one of his lawyer associates, had made the factual investigation and reported it to the client instead of its having been made by General Adjustment Bureau or the Federal Bureau of Investigation. Under the proposed opinion all this factual material, clearly discoverable up till now, would become privileged and not discoverable. The proposed opinion states that it does not mean that factual information can be made privileged by being recited by the lawyer to the client and gives the illustration of the GAB investigation and reports and the FBI investigations and report, both of which were furnished plaintiff through its discovery efforts. But, as said above, these investigations and reports were made by third parties and the fact that they were discoverable in this case does not mean that factual investigation made by the lawyer will be discoverable from now on. Lawyers are being presented with a legitimate way to avoid disclosing what has up till now been discoverable facts.

Rule 56.01(b)(3), the work product rule, will not help. For it to apply the material must be "otherwise discoverable under subdivision (b)(1)" and under the latter the material to be discovered must be "not privileged." Under the proposed decision work product can now easily be made privileged and hence immune from discovery. I am unable to predict exactly what methods and procedures will be used by resourceful lawyers to avail themselves and their clients of the discovery insulation now made possible,

1. The present statute, § 491.060, on attorney-client privilege, has remained unchanged ever since it first appeared in RSMo 1855, Ch. 168, § 6, p. 1577.

but I am sure that the ingenuity of the bar will be equal to the occasion.

I am in complete accord with Canon 4 of rule 4 that a lawyer should preserve the confidence and secrets of a client. A client expects a lawyer to keep his affairs in confidence and not to talk or gossip about them. A lawyer with a loose tongue is an abomination. But that is not the problem before us and the fact that the ethical lawyer does not talk about his client's confidences does not answer the present problem. We have here a question of discovery, where the courts are being asked to order production of what may be highly relevant evidence, not heretofore privileged, and which cannot otherwise be brought to light.

It is conceivable that communications or advice from the lawyer to the client might be pieced together to discern communications made by the client to the lawyer. In such a case, the lawyer to client communications would be privileged under the present statute, § 491.060, which forbids disclosure by the attorney of any communications made to him by the client. The statute adequately protects against indirect as well as direct disclosure of the client's communications and there is no need for us, ex gratia, to expand the rule so as to cover, carte blanche, everything the lawyer passes to the client. In the instant case, there is no cause to fear revelation of any communications by the client in the three Risjord letters under consideration by a "piecing together", if Judge Smith has read them correctly. Relators do not dispute the accuracy of Judge Smith's findings as to what the letters contain. Relator's position is that even so the letters are privileged.

I would rely on Judge Smith's appraisal of the situation as set forth in his letter to counsel (which up until now is in full accord with the Missouri law on the subject) and would permit him to deliver copies of the three letters to plaintiff's counsel.

I respectfully dissent.