Violet PIPES, Individually and as Personal Representative of the Estate of Karyl Keith Pipes, Jerry Keith Pipes, Gary Wayne Pipes, Walter Craig Pipes, and Kathy Violet St. Clair, Respondents,

v.

Beverly J. SEVIER, Roddy W. Sevier and Leone Pipes, Appellants.

No. WD 35944.

Missouri Court of Appeals, Western District.

July 23, 1985.

**920**

Terry M. Evans, Trenton, for appellants.

Gordon E. Cox, Chillicothe, for respondents.

Before PRITCHARD, P.J., and SHANGLER and DIXON, JJ.

SHANGLER, Judge.

This action, an intra-family squabble over the title to certain parcels of land under successive—and incompatible—conveyances from the mother to several family members, commenced as a petition for declaratory judgment, and was adjudicated on a petition [the fourth amendment] to remove a cloud from the title. The dispute ranged the two children of Leone Pipes—Keith and Beverly—against the other, while the mother aligned first with the cause of Keith, and then after his death, with the cause of Beverly.

The action was tried to the court, and the court adjudged that the fee simple title to the subject parcel [the Home Place] was vested in Violet Pipes and children Jerry, Gary, Walter and Kathy—all as heirs at law of grantee Keith Pipes, then deceased, subject only to the life estate reserved in the grantor, Leone Pipes.

The appellants, Beverly Sevier and son Roddy and mother Leone Pipes, contend that the evidence does not support the judgment, and other errors.

The evidence was that Ralph and Leone Pipes, parents of Keith and Beverly, owned three tracts of land in Sullivan County: the Cott Farm, the Sheppy Farm and the Home Place. The parents purchased the Home Place in 1948. That acquisition [a tract of some 297 acres] was induced by the agree-

ment of son Keith to remain with the father in the farm operation. The son Keith faithfully worked with the father from that time until year 1967, when the elder Pipes died, and thereafter continued to operate or work all three farms on a crop-share basis with mother Leone Pipes, until Keith died in 1982.

In about the year 1960, Ralph Pipes had a will prepared by attorney Leman Atherton whereby the Home Place was devised to son Keith and the Cott Farm and the Sheppy Farm to daughter Beverly, in the event wife Leone predeceased the children. The widow of son Keith, Violet Pipes, testified that it was understood within the family that the ultimate division of the farms intended by the parents was as provided in the Ralph Pipes will. Accordingly, in order to give effect to that shared intention, in November of 1972, Leone Pipes directed attorney Atherton to prepare two sets of deeds—a conveyance of the Home Place to son Keith and conveyances of the Cott Farm and the Sheppy Farm to daughter Beverly. She instructed attorney Atherton to keep them, and to deliver them only upon her death. The attorney advised her that upon delivery of the deeds to him for that purpose, "nobody could get them, not even herself." Leone Pipes understood and responded that was exactly what she wanted, "what she and [deceased husband] Ralph wanted." The attorney thereupon prepared the deeds as directed, Leone Pipes executed them, the attorney acknowledged them and affixed the notary seal, and then placed them in envelopes. There was a legend on the outside of each wrapper, respectively:

"This envelope is to be delivered to my daughter Beverly J. Sevier on my death.

/s/Leone Pipes"

and

"This envelope is to be delivered to my son Keith Pipes on my death.

/s/Leone Pipes"

These containers, sealed, were kept by attorney Atherton until they were produced as exhibits in the litigation we review.

The daughter, Beverly, accompanied the mother to the office of attorney Atherton on that occasion, but was excluded from their company at the direction of the attorney. She left at the request of Atherton. That was the version of the events given by the attorney. The narrative of daughter Beverly was different. She testified that she was present during the discussions between her mother and the attorney. The mother wanted the deeds "so that she could sell it at any time." Attorney Atherton advised, Beverly testified, that the deeds could be recalled at any time, whenever the mother decided that "[she] wanted to do anything different." That was the sense, also of the testimony of the conveyancer, mother Leone Pipes—then, from her own choice, a party defendant to the suit. The mother freely acknowledged that she directed the deeds and signed them, but only on the assurance that "I could get them when I wanted them." The mother testified also that, although it was her signature that appeared upon the face of each envelope, there was no "printing on it" when she signed each one. That testimony, however, was contradicted by her written statement made to [then] attorney Kenneth Lewis [now circuit judge] who was counsel for Keith Pipes, and given at a time before mother Pipes aligned formally with any party to the suit. That statement recited that she directed attorney Atherton to make the three deeds, two to daughter Beverly and the Home Place to son Keith, that she signed the instruments, delivered the deeds to Atherton with the direction that they were to be recorded upon her death, and that she understood the counsel of attorney Atherton "that the delivery of the deeds to him was final and that I could not thereafter cancel the deeds or change my mind. I knew that the delivery of the deeds to Mr. Atherton was unconditional."

In March of 1981, almost ten years after mother Leone executed the deeds, Beverly accompanied her mother to the office of attorney Atherton to retrieve the deeds, but he refused to deliver them up. The mother then made two visits to another

attorney, Merrill Montgomery—first in the company of son Keith and wife Violet, and then in the company of daughter Beverly. [The relations between the brother and sister were strained.] On that first visit, Leone informed attorney Montgomery concerning the deeds executed by her and given over to attorney Atherton, and of his refusal to give them back. Montgomery advised that those deeds were of no effect because unrecorded. The mother, Leone, on that first visit informed Montgomery that she wanted son Keith to have a lifetime share in the Home Place but that neither Violet nor her children were "to have any of it." The deeds to the other lands were to be "fixed" to Beverly and herself. Keith and Violet became displeased, and they left. Leone returned with Beverly the next day, and the deeds were fixed as the mother had directed. To begin with, Montgomery presented to the mother a deed which conveyed the Home Place to son Keith and mother Leone as joint tenants, but she refused it. The attorney then prepared two other deeds at the direction of Leone Pipes. One conveyed a life estate in the Home Place to Keith, and reserved a life estate to Leone, herself. The other conveyed one of the two other properties to daughter Beverly and to Leone, herself, as joint tenants. They were recorded. In April of 1981, Leone fell ill and was interned in the hospital. While there, she executed another deed which purported once again to convey the Home Place—this time to daughter Beverly in fee "subject to any interest that Keith Pipes has, if any." That deed was also duly recorded. Then, in August of 1981, Beverly conveyed the Home Place—now titled of record in her sole name—to Beverly J. Sevier and Roddy Sevier [her son] as joint tenants. That deed was also promptly recorded.

On September 1, 1981, Keith brought a petition against Beverly Sevier and Roddy Sevier for a declaratory judgment that all the conveyances of the lands, other than the deeds executed by Leone Pipes and delivered to attorney Atherton for recordation upon her death, are null and void.

The mother, Leone Pipes, joined the suit as a party plaintiff, by amendment. The plaintiffs were represented by attorney Atherton. When it became evident that his witness would be necessary, attorney Atherton withdrew from the case, and [then] attorney Kenneth Lewis entered appearance and filed a second amended petition for declaratory judgment. In November of 1982, attorney Lewis assumed duty as circuit judge, and attorney Gordon Cox, a partner, assumed the representation. The plaintiff Keith Pipes died on November 9, 1982, and his widow, Violet Pipes and their four children, Jerry, Gary, Kathy and Walter, were substituted as plaintiffs in lieu. The mother, Leone Pipes, in turn, moved to be deleted as a party plaintiff and to be added as a party defendant, and for leave to file a counterclaim. The petition was amended into a petition to remove a cloud from the title and for the cancellation of deeds. The defendants [Beverly and Roddy] counterclaimed to quiet title and for trespass. The counterclaim of [now] defendant Leone Pipes to remove a cloud from the title was not thereafter repleaded.

The judgment adjudicated that the title to the Home Place was vested in fee simple absolute in Violet Pipes, widow of the deceased Keith Pipes, and in their children, Jerry, Gary, Walter and Kathy, subject to the life estate reserved by the grantor, Leone Pipes. The judgment rested on findings of fact that the deeds drafted by attorney Atherton were drawn upon the instructions of mother Leone Pipes, executed by her, then deposited in the envelopes with the written instructions for delivery to Keith and Beverly upon her death subscribed by the signature of the grantor mother, and then only after full explanation by attorney Atherton that the delivery of the enveloped deeds to him for that purpose—made without a reserved right of recall—was a final and irrevocable act. The court found as a fact, also, that the deed was accepted by the grantee, Keith Pipes, during his lifetime, and that he thereafter died intestate and was survived by the wife and four children. The judg-

ment also adjudicated the counterclaims against the defendants

### The Denial of a Jury Trial

The original petition sought not only a declaratory judgment, but also money damages on general allegations that the defendants acted with the intent to deprive the plaintiffs of the Home Place and other lands when they recorded the deeds with full knowledge of the prior conveyances of the lands and delivery of the deeds into the Atherton escrow. The count for money damages, [as the appellants concede], however, was thereafter deleted and the pleading was amended into a Petition To Remove Cloud From Title And Cancel Instruments. The appellants argue that the deletion of the money count "was [an] attempt to change an action at law to one in equity ... [and thereby] to deprive Appellants of a right to a jury trial." They argue further that the nature of the petition notwithstanding, their counterclaims for trespass and to quiet title were actions at law, and thus were for trial to a jury. They contend that the denial of their request for a jury trial, therefore, was error.

The issue for the court was to try the title to the Home Place: to determine from the contested claims whether the Atherton deed to the Home Place vested the fee in son Keith [subject to the life estate reserved by the grantor mother], or whether that deed lapsed as a conveyance for want of the present intent of the grantor to consummate a delivery. In that event, the deeds to the Home Place subsequently executed by mother Leone and then recorded were the effective vestments of title. The petition of the plaintiffs, whether by the original declaratory judgment, or the amendment upon which the issues were joined: to remove cloud from title—each expressly invoked the judicial power to cancel the pretended conveyances to the Home Place executed and recorded after the November 1972 conveyance to son Keith and delivery of deed to attorney Atherton.

■ A suit to try title to real estate may be an action at law or in equity, according to the issues formulated by the pleadings. *La Presto v. La Presto,* 308 S.W.2d 724, 726[1] (Mo.1958). Thus, where a petition to quiet title asserts no ground for equitable relief, the action is at law, and a litigant is entitled to a trial by jury. *Roberts v. Murray,* 232 S.W.2d 540, 541[1] (Mo.1950). Where, however [as here], cancellation of deeds to dispel the cloud on the title is integral to the relief the pleadings seek, the petition invokes the power of a court of equity, par excellence, and the right to a trial by jury does not accrue. *Land Clearance for Redevelopment Authority, et al. v. Zitko,* 386 S.W.2d 69, 79[15] (Mo. banc 1964); 13 Am.Jur.2d *Cancellation of Instruments* §§ 1–6 (1964). Since equity retains jurisdiction of a cause to give full relief once its power attaches, a right to a trial by jury does not accrue merely because an incident of that relief is the adjudgment of money damages. *State ex rel. Willman v. Sloan,* 574 S.W.2d 421, 422[1] (Mo. banc 1978). Nor, cognately [and contrary to contention], does a counterclaim at law convert an action otherwise in equity so as to vest in the counterclaimant a right to a trial by jury. *McKinley v. Durbin,* 231 S.W.2d 286, 290[3–4] (Mo. App.1950).

■ The arguments the defendants make, in any event, are not even colorable. The petition on which the issues were joined sought no money damages, but only the cancellation of deeds. The counterclaims they contend transmuted the proceeding into one at law were bifurcated from the petition—by order of the court and acquiescence of the litigants—for separate trial should the petition fail. The plea of the petition for cancellation of the subsequent deeds was upheld, and hence the counterclaims required no decision except for dismissal, and hence the right to a jury trial on those claims never ripened. The demand for a jury trial was properly refused.

### The Attorney-Client Privilege

The defendants contend that at the times described in the testimony of attorney Atherton and [then] attorney Lewis, the attor-

ney-client relationship subsisted between Leone Pipes and each of the named attorneys, hence the communications between them on subject matter encompassed by the professional relationship were privileged and could not be disclosed without the consent of the client. Atherton, as our discussion discloses, prepared the three deeds in November of 1972 to the three tracts then owned by Leone Pipes: the Home Place to son Keith, and the Cott Farm and the Sheppy Farm to daughter Beverly. Atherton testified in detail as to the circumstances of the preparation, execution and delivery of the instruments to his care with directions from the grantor mother Leone. These conveyances, Atherton testified Leone had informed him, were to carry out the intentions of her husband, then deceased. Atherton described how the deeds were placed in separate enclosures with the separate legends that the envelope was to be delivered to Keith and Beverly, respectively, "on my death"— written over the subscription of her signature. Atherton testified, most tellingly, that he informed Leone Pipes if he carried out her instructions as to the transactions "there was no way she or anyone else could get them [the deeds]." The defendants contend that these communications were incidents of the attorney-client relationship, and therefore were privileged and incompetent as evidence, over objection. The defendants did lodge objection at the trial, but that objection was ineffectual and properly refused for the simple reason that Leone Pipes had executed a formal waiver of her privilege—a waiver obtained from the witness by [then] attorney Lewis, counsel for Keith and Violet Pipes. That waiver [received as an exhibit 19] was executed by Leone Pipes on July 19, 1982, and recites:

"I, Leone Pipes, hereby waive the attorney-client privilege regarding confidential communications with L.E. Atherton and hereby authorize him to testify in any legal action pertaining to any land which I now own or formerly owned.
/s/Leone Pipes"

The attorney-client privilege dates from the common law. Section 491.-060, RSMo 1978 enacts that developed principle:

"The following persons shall be incompetent to testify:

.          .          .          .

(3) An attorney, concerning any communication made to him by his client in that relation, or his advice thereon, without the consent of such client."

The privilege that the communications shall remain confidential is for the benefit of the client, not the lawyer, and extends to all communications by either of them to the other, and protects information transmitted in confidence in that relation. *State ex rel. Great American Insurance Company v. Smith*, 574 S.W.2d 379, 382[1–4] (Mo. banc 1978). The privilege, personal to the client, may be waived by the client. *Canty v. Halpin*, 294 Mo. 96, 242 S.W. 94, 96[7–9] (banc 1922). There is no doubt that the communications between Leone Pipes and attorney Atherton were at the time the attorney-client relation subsisted between them, and that his advice on them was given in that capacity and on that account. That is to say, that the communications were privileged. Nor is there doubt that the privilege that they remain confidential, owned by the client, was waived by the client. Thus, the testimony of attorney Atherton was properly received.

The defendants assert that the testimony of [then] attorney Lewis was incompetent, and for the same reason. The original suit for declaratory judgment and for cancellation of the post-Atherton deeds was filed on September 11, 1981 by attorney Atherton on behalf of Keith Pipes as plaintiff and against Beverly Sevier and son Roddy as defendants. It became evident that the testimony of attorney Atherton was necessary to prove the cause of action, so he withdrew as counsel and referred the suit to [then] attorney Lewis. On June 15, 1982, Keith Pipes and wife Violet engaged the Lewis firm: Cleaveland, Macoubrie, Lewis and Cox as counsel to prosecute the petition. The contract of employment spe-

cified payment at a designated rate per hour, and required an advance of $2000. The Pipes husband and wife executed the contract at the home, and the mother Leone was then present. The retainer for $2000 was paid by a check signed by Leone Pipes. On that occasion, Lewis interrogated all three—Leone, Keith and Violet—in the presence of each other concerning the transactions involved, particularly the three Atherton deeds. On that June 15, 1982 occasion, attorney Lewis took from Leone Pipes a written statement subscribed by her signature concerning the Atherton deeds transactions—received at the trial as Exhibit 20. In that statement, Leone Pipes narrated the circumstances which induced her execution of the deeds at the Atherton office [the intention shared with the deceased husband that Keith inherit the Home Place, and that Beverly have the other two farms, subject to her use of the property during her lifetime], and that the conveyances were made with the understanding of the advice by Atherton "that the delivery of the deeds to him was final and that I could not thereafter cancel the deeds or change my mind."

Attorney Lewis returned to the Pipes residence on July 19, 1982, to prepare Leone Pipes for her deposition on the next day. That deposition was never signed by the witness, nor was the signature waived, and so it was never received as an exhibit at the trial. Attorney Lewis testified at the trial that during the course of the deposition testimony, witness Leone Pipes was asked several times, and answered without variance, that Atherton advised her that "a delivery to him was final, absolute, unconditional and irrevocable and that she could not get the deed back." Moreover, testified attorney Lewis, that was the same response Leone gave "on many occasions every time I talked to her."

The defendants contend that the statements contained in Exhibit 20, as well as the testimony narrated by attorney Lewis at the trial concerning the communications from Leone Pipes were disclosures of confidential communications between attorney and client, and hence incompetent as evidence upon objection of the client.

The contention that the attorney-client relation subsisted between Lewis and Leone from June 15, 1982, rests altogether on the circumstance that the $2000 retainer was paid by a check signed by Leone and drawn upon her account. There was evidence that mother Leone became aware that the numerous deeds executed by her and recorded subsequently to the Atherton transactions impaired her intentions to retain a lifetime use of the properties, and so she shared the disposition of the son Keith to seek the cancellation of the latter conveyances by a suit against sister Beverly and son Roddy, in whose names the recorded title to the Home Place was lodged at the time the petition was filed—in September of 1981. The contract of employment in evidence, executed on June 15, 1982, was between attorney Lewis and Keith and Violet Pipes exclusively. The mother, Leone, was not a party. Attorney Lewis considered the retainer check, albeit drawn by Leone, as payment from the clients, Keith and Violet. The trial court expressly accepted that evidence as true. To be sure, Leone Pipes later [in October of 1982] joined son Keith as a party plaintiff on the petition against Beverly and son Roddy to cancel the latter deeds, but the attorney-client relationship did not arise until some time after July 20, 1982 [when the deposition of Leone was taken] and before October of 1982 [when Leone was formally joined as a plaintiff]. The trial court expressly found that the attorney-client relationship between attorney Lewis and Leone Pipes did not come into being until after July 20, 1982, so that the evidence given by Lewis at the trial concerning the Leone Pipes communications to him as to the Atherton transactions was competent.

To exclude the testimony of an attorney on the ground of privilege, the relation of attorney and client must have actually subsisted between the principals at the time the communication was made or the advice given. *State ex rel. Great American Insurance Company v. Smith,*

574 S.W.2d 379, 386[8] (Mo. banc 1978). The communication, moreover, must have been made to the attorney on account of the relation of attorney and client. The question whether the circumstances have given rise to the relation of attorney and client presents a question of law. *Bussen v. Del Commune, et al.*, 239 Mo.App. 859, 199 S.W.2d 13, 20[10, 11] (1947). Nor does the circumstance that the declarant herself later becomes a client cloak communications between them before the onset of that relation with confidentiality and privilege from disclosure. *State v. Bailey*, 365 Mo. 160, 278 S.W.2d 737, 740[1] (banc 1955). The determination by the trial court that Leone was not a client of attorney Lewis until after the deposition event is valid, and we sustain it.

### The Delivery of the Atherton Deeds

The defendants contend that the evidence does not sustain a valid delivery of the Home Place deed to Atherton. They argue the evidence given by Leone Pipes [by then, no longer a plaintiff, but a defendant aligned with daughter Beverly] that she gave the deed [and the two others] over to attorney Atherton for "safekeeping," and not as an irrevocable conveyance. The defendants argue that her attempt to retrieve them ten years later and the execution of the successor deeds when Atherton refused to yield them up prove that the placement into his escrow was without intention to pass title—that is, make delivery. They argue, moreover, that the legend on the envelope: "This envelope is to be delivered to my son, Keith Pipes, on my death" not only does not evince an intention for delivery, but expressly contradicts any such purpose.

The intention of the principals, particularly that of the grantor, determines whether a delivery of a deed has been accomplished. The essential inquiry, therefore, is whether the grantor intended a complete transfer: that is, whether the grantor parted with the instrument with the intention to relinquish all dominion and control over it so as to make the deed a presently effective and operative conveyance of title to the land. *Shroyer v. Shroyer*, 425 S.W.2d 214, 219[2–7] (Mo. 1968). It is not essential to delivery that the deed be manually given over to the grantee or to another person for the grantee; there may be delivery notwithstanding that the deed remains in the custody of the grantor. *Meadows v. Brich*, 606 S.W.2d 258, 260[4–6] (Mo.App.1980). A delivery to a third party, to be held by that party for delivery to the grantee upon the death of the grantor operates as a valid delivery when there is no reservation in the deed nor any right of control over the instrument retained by the grantor. In such case, the deed in the hands of the custodian has the same effect "as if it had been manually delivered by the grantor to the grantee." *Meredith v. Meredith*, 287 Mo. 250, 229 S.W. 179, 181[4] (1921); *Potts v. Patterson*, 355 Mo. 154, 195 S.W.2d 454, 456[1–3] (1946). A deed unconditional in terms and placed beyond control of the grantor upon its delivery to the third party escrow holder, moreover, although not a conferral of an immediate right to present possession, constitutes "such an investiture of title as to give the grantee a present fixed right of future enjoyment although the use of the premises [is] retained by the grantor during [her] life ... The time of acceptance will not affect the validity of the transfer ... Acceptance after the death of the grantor dates back to the time of the delivery of the deed to the ... [escrow holder] and renders it a transfer as of that date." *Meredith v. Meredith*, supra, l.c. 181[5, 6]. On this principle, upon final delivery by the depositary of the deed given in escrow, "the instrument will be treated as relating back to, and taking effect at the time of the original deposit *in escrow ... [and this] appl[ies] even though one of the parties to the deed dies before the second delivery.* *Donnelly v. Robinson*, 406 S.W.2d 595, 598[3] (Mo.1966). On this principle, the death of the grantee Keith Pipes which intervened before the second delivery from depositary Atherton is of no legal consequence—the validity of the de-

livery by Leone to Atherton in the first instance, assumed.

The defendants argue that Leone did not intend a delivery, but only to vouchsafe the keeping of the executed deeds. The evidence on the essential issue of delivery was in conflict—and in the case of Leone, herself, in utter contradiction. The court found her trial testimony not credible, and gave it no belief. The court noted that at the outset of the litigation [when her statement of the transaction was given to attorney Lewis, and then on deposition], she aligned herself first informally, and then formally as a plaintiff, with the petition of son Keith: that the delivery of the deed to the Home Place was a final and irrevocable act, not subject to recall, and hence that equity should cancel the subsequent deeds executed by Leone, herself, and then recorded. The court noted also that after the death of son Keith, Leone realigned her position as well as her evidence to conform with the interests of daughter Beverly, and joined her as a party defendant. The court found as fact that Leone executed the deed to the Home Place in favor of son Keith and delivered the instrument in escrow with attorney Atherton with instruction to deliver to Keith upon her death only after full advice from him that such an act of delivery, when made without a reserved right of recall, was irrevocable and final. The court also found the testimony of attorney Atherton disinterested and credible, believed his testimony of the deed transactions with Leone Pipes, and rendered judgment accordingly. We concur in the thoughtful and meticulously-wrought judgment of the trial court: that the deed executed by Leone Pipes and delivered to attorney Atherton as escrow holder placed fee simple title to the Home Place in Keith Pipes, subject only to a reserved life estate in the grantor, Leone Pipes; that on the death of Keith Pipes, that interest passed to his wife and children as his sole heirs at law, and that the counterclaims of the defendants be disallowed with prejudice.

The judgment is affirmed.

All concur.